UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | CHAPTER 11 |
| MIDNIGHT MADNESS DISTILLING LLC | CASE NO. 21-11750-MDC |

**DEBTOR'S EXPEDITED MOTION FOR ENTRY OF AN ORDER: (I) APPROVING THE SALE OR SALE OF UP TO SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, (III) SCHEDULING HEARINGS FOR SUCH RELIEF AND (IV) GRANTING RELATED RELIEF**

Debtor, Midnight Madness Distilling, LLC (the "Debtor"), by and through its undersigned proposed counsel, files this Expedited Motion for the entry of:

(A) An order, substantially in the form attached hereto as Exhibit A (the "Bidding Procedures Order"), (i) scheduling a hearing (the "Sale Hearing") on approval of the sale (the "Sale") of substantially all of the Debtor's real and personal property and other related interests (the "Assets"), free and clear of all liens, claims, encumbrances, and other interests (collectively, the "Encumbrances"), other than those Encumbrances permitted by the Asset Purchase Agreement by and between the Debtor and ETOH Worldwide, LLC (the "Buyer") dated as of June 21, 2021 (the "APA") and authorizing the assumption and assignment of certain executory contracts and unexpired leases (each, an "Assumed Contract," and collectively, the "Assumed Contracts") in connection therewith, (ii) authorizing and approving certain proposed bidding procedures for the Sale in the form attached to the Bidding Procedures Order as Exhibit 1 (collectively, the "Bidding Procedures"), certain proposed assumption and assignment

8339687 v1

procedures (collectively, the "Assumption and Assignment Procedures"), and the form and manner of notice thereof; and (iii) granting related relief; and

(B)    After the Sale Hearing, an order (the "Sale Order")[1], (i) authorizing and approving the Debtor's entry into the APA with Buyer or other Successful Bidder or Back-Up Bidder (each as defined in the Bidding Procedures), as applicable; (ii) authorizing and approving the Sale of the Assets, free and clear of all Encumbrances other than those permitted by the applicable APA; (iii) authorizing and approving the assumption and assignment of the Assumed Contracts in connection therewith; and (iv) granting related relief.

In support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief requested herein are 28 U.S.C. § 156(c), and Sections 105(a), 363 and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.    On June 21, 2021 (the "Petition Date"), the Debtor filed a voluntary petition with this Court under Chapter 11 of the Bankruptcy Code.

---

[1] The Debtor will file a form of Sale Order as soon as practicable after such document is negotiated with the Buyer.

2

4.     The factual background relating to the Debtor's commencement of this case is set forth in detail in the *Declaration of Casey Parzych in Support of First Day Motions and Applications* filed on the Petition Date and incorporated herein by reference.

5.     As described on the First Day Affidavit, the Debtor is a Pennsylvania limited liability company and operates a distillery and packaging plant in Bucks County, Pennsylvania. It employs approximately 80 individuals on a full and part-time basis.

6.     The Sale contemplated herein is critical to ensure the viability of the Debtor's business, payment to vendors and provide a chance of continued employment for workers.

7.     At the current time, the Debtor is in default with its primary lender, PNC Bank, N.A., its business operations are losing money, and its disgruntled, ousted and out-of-the-money minority shareholder has initiated needless litigation.

8.     Without an outside investment and continuation of support from Buyer and affiliates including AgTech VI, LLC and EtOH Worldwide, LLC as well as XO Energy Worldwide, LLP (as the sole member of AgTech VI, LLC and EtOH Worldwide, LLC) (collectively, the "Buyer Affiliates"), the Debtor will be unable to pay debt service and continue operations. Fortunately, the Debtor has entered into various ventures with the Buyer Affiliates to help keep the business afloat (as described in greater detail below).

9.     As a result, the Buyer Affiliates have made a substantial investment into the Debtor's business. For example, since February of 2021 the respective Buyer Affiliates have leased certain canning machinery to the Debtor (at a below market rate of $.12 per can) which has generated about 60% of the Debtor's current revenue. Although commenced three months ago, the Debtor has yet to pay rent for such leases and remains in arrears for over $140,000 on such payments. In all, at this time, the Buyer Affiliates have committed substantial other

3

investments with the Debtor and related businesses with the hopes of entering into a longer-term, acceptable and stable solution with Debtor as well. To date, the Buyer Affiliates efforts have been thwarted because of an inability to reach a resolution outside of bankruptcy with the Debtor's secured lender and a minority equity holder.

10. The Buyer Affiliates are running out of patience. In light of the pending PNC default, the Buyer Affiliates have asked the Debtor to either sell its assets in a Chapter 11 Section 363 sale or proceed without the Buyer Affiliates' support.

11. At this point, the Debtor cannot survive without the Buyer Affiliates or another purchaser. Absent consummation of the APA and related transactions, the Debtor will likely be liquidated, leaving the Debtor's secured lenders with far less than their portion of the Purchase Price, trade creditors with nothing and approximately 80 employees out of jobs in a small town.

12. The APA can generally be summarized as follows:[2]

    i. A Purchase Price of $1,025,000 for all or substantially all of the Debtor's Assets free and clear of liens, claims and encumbrances (other than as otherwise specifically assumed by the APA);

    ii. Assumption of the liability for the Debtor's trade debts to the extent not included in the Purchase Price;

    iii. Assumption and cure of all/substantially all leases and contracts needed for Debtor's business operations;

    iv. Assumption of the first mortgage of Francis E. Stubbs and Maria Del Carmen Nuno for the Debtor's real property located at 118 N. Main Street, Trumbauersville Borough, Bucks County, Pennsylvania;

---

[2] This is a summary only provided for a general understanding of the transaction represented in the APA. If there is any contradiction or differences between this summary and the APA, the specific terms of the APA shall exclusively control.

4

8339687 v1

      v.      Continued employment of all or substantially all of the Debtor's current employees; and

      vi.      Entry into a Master Subcontract Agreement and sublease arrangement that will enable the Buyer to subcontract operations to Debtor while Buyer obtains its own licenses from the Pennsylvania Liquor Control Board.

13. Despite the Debtor's existing connections with the Buyer Affiliates and the substantial advantages the APA provides to the Debtor and its employees and creditors, the Debtor seeks to obtain maximum exposure of the APA to the market to ensure that the highest and best offer is being obtained for the assets being sold.

14. Buyer is the stalking horse here, and the Debtor believes that the offer and transactions contemplated by the APA are fair and reasonable and in the best interests of the estate and its creditors.

15. Nevertheless, the Debtor seeks to solicit all other potential bidders in the market, strategic and financial or otherwise, to determine if a higher and better offer can be obtained.

16. The Debtor has an Application seeking the employment of Comly Auctioneers and Appraisers as the Debtor's Broker in this case ("Comly") currently pending. Comly is familiar with the Assets, having previously provided an appraisal to PNC. Comly has vast professional expertise in the sale and marketing of distressed assets and will assist the Debtor in marketing the Assets to determine if any other buyers are able to step forward.

17. Detailed Bid Procedures are provided in the Bid Procedures Order that accompany this Motion. Importantly, the Bid Procedures provide that in the event that a Qualified Bid emerges, an Auction will occur. But, in order to obtain the Buyer's agreement to act as a stalking horse buyer, the Seller has agreed to seek approval of the following bid protections and other features as noted in the Bid Procedures:

5

      i.      An expense reimbursement of up to $100,000;

      ii.      An initial bid increment of the expense reimbursement plus $50,000 for a total initial bid increment of $150,000; and

      iii.      Subsequent bid increments of $50,000, with the ability to have the Buyer credit bid the value of the expense reimbursement and the break-up fee.

## EXPEDITED CONSIDERATION

18.    In order to effectuate this transaction in a timely manner and enable the business to continue, creditors to be paid and jobs preserved, the Buyer Affiliates require that deal be consummated by August 12, 2021. Working backwards and as a result of that closing date, the Buyer Affiliates also require that this Court hold a hearing on bidding procedures prior to July 14, 2021 (subject to this Court's availability). In light of all of the benefits to the estate and also based on the *Declaration of Casey Parzych in Support of First Day Motions and Applications,* the Debtor respectfully requests that this Court schedule the bid procedures hearing prior to July 14, 2021.

## NOTICE PROCEDURES FOR THE SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

19.    The Debtor also requests approval of the sale notice (the "Sale Notice"), substantially in the form attached to the Bidding Procedures Order as Exhibit 2. Within one (1) business day of the entry of the Bidding Procedures Order, the Debtor will serve the Sale Notice by first class mail on: (1) the Office of the United States Trustee; (2) counsel to the Official Committee of Unsecured Creditors, if any; (3) counsel to PNC, N.A, Debtor's prepetition secured lender; (4) all parties known by the Debtor to assert a lien on any of the Assets; (5) all persons known to have asserted an interest in any of the Assets; (6) all non-Debtor parties to any of the Assumed Contracts; (7) the Office of the United States Attorney for the Eastern District of

8339687 v1

Pennsylvania; (8) the Office of the Attorney General in Pennsylvania; (9) the Office of the Secretary of State of Pennsylvania; (10) the Internal Revenue Service; (11) the Pennsylvania Department of Revenue; (12) the Pennsylvania Liquor Control Board; (13) the United States Environmental Protection Agency and similar state agency in Pennsylvania; and (14) any other parties that have filed a notice of appearance and demand for service of papers in this chapter 11 case as of the date of service.

20. In addition, the Debtor will serve the Sale Notice on all of the Debtor's known creditors, investors, and equity/unit holders (for whom identifying information and addresses are available to the Debtor).

## **ASSUMPTION AND ASSIGNMENT PROCEDURES**

21. To facilitate the Sale, the Debtor seeks authority to potentially assume and assign the Assumed Contracts to the Buyer in accordance with the Assumption and Assignment Procedures. The Assumption and Assignment Procedures are detailed in the Bidding Procedures Order, and they include the following:

- The identification of contracts that could potentially be assumed or assumed and assigned and the proposed Cure Amount.

- Service of an assumption notice, substantially in the form attached to the Bidding Procedures Order as Exhibit 3.

- The provision of seven (7) days for counterparties to the Assumed Contracts (each a "Counterparty") to object to the Debtor's ability to assume and/or assign the contract and proposed Cure Amount, excluding adequate assurance of future performance of the Debtor or assignee.

- The requirement of notice after the Auction (if any) to the proposed assignee with at least approximately three (3) business days to object to adequate assurance of future performance of the assuming Debtor or its proposed assignee, as applicable.

- The condition that failure to timely object to the proposed assumption, assignment (if applicable), and Cure Amount, will result in the Counterparty being deemed to consent to the proposed assumption or assumption and assignment and Cure Amount.

7

## RELIEF REQUESTED

22. By this Motion, the Debtor seeks entry of: (a) the Bidding Procedures Order, (i) scheduling a date for the Sale Hearing, (ii) authorizing and approving the Bidding Procedures and the Assumption and Assignment Procedures, and the form and manner of notice thereof, and (iii) granting related relief; and (b) one or more Sale Orders, (i) authorizing and approving the Debtor's entry into the APA(s) with Successful Bidder(s) or Back-Up Bidder(s), as applicable, (ii) authorizing and approving the Sale(s), free and clear of all Encumbrances, (iii) authorizing and approving the assumption and assignment of the Assumed Contacts in connection with such Sale(s); and (iv) granting related relief.

23. The Bidding Procedures Order, if approved, will establish the following timeline (all times in ET), which the Debtor believes is appropriate to arrive at a value maximizing transaction:

[Remainder of Page Intentionally Left Bank]

8339687 v1

| Event | Proposed Dates |
|---|---|
| Bidding Procedures Hearing | **Prior to July 14, 2021** |
| Deadline to serve Sale Notice, including to potential purchasers by first class mail | **One business day after Bidding Procedures Order is entered** |
| Deadline to serve Assumption Notice | **One business day after Bidding Procedures Order is entered** |
| Deadline to object to Assumption Notice (other than adequate assurance) | **August 5, 2021 at 4:00 p.m.** |
| Deadline to object to Sale (other than with respect to assumption and assignment) | **August 5, 2021 at 4:00 p.m.** |
| Bid Deadline | **July 29, 2021 at 12:00 p.m.** |
| Auction, if any, commence | **August 3, 2021 at 10:00 a.m.** |
| Deadline to object to adequate assurance | **August 5, 2021 at 4:00 p.m.** |
| Deadline to Object to Conduct of Auction | **At Sale Hearing** |
| Sale Hearing | **August 6, 2021** |
| Outside Closing Date | **August 12, 2021** |

24.     The Debtor respectfully submits that the timeline set forth in the Bidding Procedures is reasonable and necessary under the circumstances of these cases. Such timeline will allow parties in interest sufficient time to determine whether to formulate competing bids.

25. If appropriate and necessary, the Debtor will also promptly make the disclosures required under Bankruptcy Rules 6004 and Local Rule 6004-1(b) with respect to any Qualified Bids.

## BASIS FOR RELIEF

### A. Sufficient Business Justification Exists for Consummation of the Sale Under Bankruptcy Code Sections 105(a) and 363(b)

26. Pursuant to section 105(a) of the Bankruptcy Code, a "[c]ourt may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have required that such use, sale or lease be based upon the sound business judgment of the debtor. See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (internal citation omitted); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Ahhotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147-48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of In re Lionel Corp.); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (holding that the Third Circuit adopted the "sound business judgment" test in Abbotts Dairies); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) (same).

27. The demonstration of a valid business justification by the debtor leads to a strong presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best

10

interests of the company." Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

28. The Debtor submits that its decision to market and sell its Assets, through a section 363 sale, represents a reasonable exercise of the Debtor's business judgment and, accordingly, the Sale should be approved under sections 105(a) and 363(b) of the Bankruptcy Code. As discussed above and in the First Day Affidavit, the Debtor is unable to continue as a going concern under their existing debt structure, thereby necessitating a comprehensive restructuring of the Debtor and its assets. The Debtor submits that a sale of its Assets will effectuate this necessary change.

29. In seeking approval of the APA, the Debtor intends to ensure that the APA is the highest and best value for their Assets. The Debtor is committed to considering all rational and viable proposals in search of that goal. The open and fair sale process contemplated by the Bidding Procedures will ensure that the Debtor's estate receive the highest and best value available for the Assets by allowing the market to set the purchase price of the Assets and/or to test any purchase price contained in the APA from the Buyer. Furthermore, compliance with the Bidding Procedures will ensure the fairness and reasonableness of the consideration to be paid by any Successful Bidder, and establish that the Debtor and the Successful Bidder have proceeded in good faith.

30. Additionally, the Debtor believes that the notice procedures described above are reasonable and adequate under the circumstances. Bankruptcy Rules 2002(a) and (c) require the Debtor to notify creditors of the Sale, the terms and conditions of the Sale, the time and place of the Auction, if any, and the deadline for filing any objections. The Debtor believes that the

proposed notice procedures fully comply with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Sale, Bidding Procedures, Auction, and Sale Hearing to the Debtor's creditors and all other parties in interest that are entitled to notice, as well as those parties that have expressed a bona fide interest in acquiring the Assets.

31. The Sale conducted in accordance with the Bidding Procedures will generate significant value for the Debtor's estate and represents the best path forward for maximizing recoveries to such estate, the Debtor's creditors, and all parties in interest. The Debtor submits that ample business justification exists for the consummation of the Sale and, therefore, requests that this Court approve the Sale.

**B.    The Sale of the Assets Free and Clear of All Encumbrances Is Authorized Under Bankruptcy Code Section 363(f)**

32. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

33. Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens and interests. See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that because section 363(f) is written in the disjunctive, a

12

court may approve a sale free and clear if any one subsection is met); see also Mich. Emp 't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (same); In re Bygaph, Inc., 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same). Furthermore, a debtor possesses broad authority to sell assets free and clear of liens. See In re Trans World Airlines, Inc., 322 F.3d 283, 289 (3d Cir. 2003).

34. The Debtor submits that, in the interest of attracting the best offers, it is appropriate to sell its Assets free and clear of any and all Encumbrances (except as otherwise expressly set forth in the Sale Order and the APA) in accordance with section 363(f) of the Bankruptcy Code, because one or more of the tests of section 363(f) are, or will be, satisfied with respect to any Sale. In particular, the Debtor believes that section 363(f)(2) of the Bankruptcy Code will be met, because the Debtor's prepetition secured lenders are secured by, among other things, any liens on the Assets, which will instead attach to the proceeds to be paid at closing of the Sale.

35. The Debtor further anticipates that it will be able to satisfy one or more of the conditions set forth in section 363(f). The Debtor will serve the Sale Notice on all parties known to assert a lien, claim, or encumbrance against the Assets, so lienholders will receive notice and will be given sufficient opportunity to object to the relief requested. Lienholders that are on notice of, and do not object to, a Sale should be deemed to have consented to that Sale. See, e.g., FutureSource LLC v. Reuters Ltd., 312 F.3d 281, 285-86 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); Hargrave v. Twp. of Pemberton (In re Tabone, Inc.), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that

creditor's failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); In re Elliot, 94 B.R. at 345 (same). In the event of an objection from a secured creditor to the Debtor's requested section 363(f) finding, the Debtor reserves the right to demonstrate that the other provisions of section 363(f) have been satisfied.

### C.  The Sale Should Be Subject to the Protections of Section 363(m)

36.     Section 363(m) of the Bankruptcy Code provides, in part, that the reversal or modification on appeal of an authorization of a sale pursuant to section 363(b) or section 363(c) of the Bankruptcy Code does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. *See* 11 U.S.C. § 363(m).

37.     In approving the Sale free and clear of Encumbrances, the Debtor requests that the Court find and hold that the Buyer is entitled to the protections afforded by section 363(m) of the Bankruptcy Code. Such relief is appropriate in that selection of the Buyer was performed via arm's-length, good-faith negotiations that were then subject to the Bidding Procedures, and parties in interest will have the opportunity to review and object to a proposed transaction. See Esposito v. Title Ins. Co. of Pa. (In re Fernwood Mkts.), 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (good faith purchasers are protected under section 363(m) where notice is provided to lienholders).

### D.  The Court Should Approve the Bidding Procedures

38.     The key objective in any sale of property of a debtor's estate is to maximize the value received by the estate. See In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir. 2004) (finding that debtor "had a fiduciary duty to protect and maximize the estate's assets"); Official

14

8339687 v1

Comm. of Unsecured Creditors of Cybergenics, Corp v. Chinery, 330 F.3d 548, 573 (3d Cir.2003) (same). Procedures used to enhance competitive bidding support this objective and, therefore, are appropriate in the context of bankruptcy Sale. See In re O'Brien Envil. Energy, Inc., 181 F.3d 527, 537 (3d Cir. 1999); see also Integrated Res. Inc., 147 B.R. at 659 (stating that bidding procedures "encourage bidding and . . . maximize the value of the debtor's assets").

39.     The Debtor has designed the Bidding Procedures (including the expense reimbursement and bid increments) to incentivize the Stalking Horse bidder while also promoting a competitive and fair bidding process. Thus, this will maximize the value for the Debtor's estate and creditors. The Bidding Procedures will allow the Debtor to conduct any Auction (if necessary) in a controlled, fair and open fashion that will encourage participation by financially capable bidders, thereby increasing the likelihood that the Debtor will receive the highest and best possible consideration for the Assets (or, alternatively, demonstrate that the APA is in fact already the best achievable consideration for the Assets).

40.     Furthermore, the Bidding Procedures provide an appropriate framework for the Debtor to review, analyze and compare any bids received in order to determine which bids are in the best interests of the Debtor's estate and its creditors. The Debtor submits that this timetable is fair and reasonable in light of the Debtor's current circumstances.

41.     The Debtor submits that the forgoing procedures are fair and transparent and will derive the highest and best bids for the Assets. Therefore, the Debtor requests that the Court approve the Bidding Procedures, including the dates established thereby for the Auction and the Sale Hearing.

**E.     The Assumption and Assignment of the Assumed Contracts in Connection with the Sale Satisfies Bankruptcy Code Section 365**

8339687 v1

42. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." See 11 U.S.C. § 365(a). Courts have held that "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 COLLIER ON BANKRUPTCY ¶ 365.01[1] (15th ed. 1993)).

43. As set forth above, the Sale should provide significant benefits to the Debtor's estate and maximize the value of the Assets. To that end, permitting the Debtor to assume and assign the Assumed Contracts should provide the Debtor with flexibility to enter into a transaction that will obtain the greatest benefits from any Sale. In addition, under section 365(k) of the Bankruptcy Code, the assignment by a debtor to an entity of a contract or lease "relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment." See 11 U.S.C. § 365(k). Thus, following an assignment of any Assumed Contract, the Debtor will be relieved from any liability for any subsequent breach associated therewith.

44. Furthermore, Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the Assumed Contracts must be cured or that adequate assurance be provided that such defaults will be promptly cured. See 11 U.S.C. § 365(b)(1). The Debtor proposes to file with this Court and serve on each Counterparty to an Assumed Contract an Assumption Notice that indicates the proposed Cure Amount for each such contract. As such, each Counterparty will have the opportunity to object to the proposed assumption and

16

assignment to the Buyer or Successful Bidder and to the proposed Cure Amount, if applicable. Moreover, the payment or reserve of the applicable Cure Amount will be a condition to the Debtor's assumption and assignment of any Assumed Contract.

45. Relatedly, section 365(f)(2) of the Bankruptcy Code provides that a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2). The words "adequate assurance of future performance" must be given a "practical, pragmatic construction" in light of the facts and circumstances of the proposed assumption. See In re Fleming Cos., Inc., 499 F.3d 300, 307 (3d Cir. 2007) (internal citation omitted); Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (same); see also In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (finding that adequate assurance of future performance does not mean absolute assurance that debtor will thrive and profit); In re Bon Ton Rest. & Pastry Shop, Inc., 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

46. Specifically, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. See In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (holding that adequate assurance of future performance is given where assignee of lease has financial resources and expresses willingness to devote sufficient funding to the business to ensure its success, and that in the leasing context, chief determinant of adequate assurance is whether rent will be paid).

8339687 v1

47. Here, the Buyer or Successful Bidder will have provided adequate assurance of future performance with respect to any Assumed Contract to the extent requested or as provided in the Bid Procedures.

48. Therefore, the Debtor respectfully requests that the Court (a) approve the proposed assumption and/or assumption and assignment of the Assumed Contracts, and (b) find that all anti-assignment provisions of such contracts to be unenforceable under section 365(f) of the Bankruptcy Code.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h) AND 6006(d)

49. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Furthermore, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

50. As set forth throughout this Motion, any delay in the Debtor's ability to consummate the Sale would be detrimental to the Debtor, its creditors and estates, and would impair the Debtor's ability to take advantage of the substantial cost-savings that can be achieved by an expeditious closing of the Sale.

51. For this reason and those set forth above, the Debtor submits that ample cause exists to justify a waiver of the fourteen day stay imposed by Bankruptcy Rule 6004(h) and 6006(d), to the extent applicable.

## NOTICE

52. Notice of this Motion has been provided to: (a) the Office of the United State

Trustee; (b) counsel to PNC, N.A.; (c) all of the creditors listed on the Debtor's matrix; (d) all applicable federal, state and local taxing and regulatory authorities having jurisdiction over the Assets and the Pennsylvania Liquor Control Board; (e) all parties known to the Debtor who hold any lien or security interest in the Debtor's Assets who have filed UCC-1 financing statements against the Debtor, or who, to the Debtor's knowledge, have asserted any liens on any of the Debtor's Assets; and (f) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submit that no other or further notice is necessary.

## NO PRIOR REQUEST

53.     The Debtor has not previously sought the relief requested herein from this or any other Court.

## CONCLUSION

WHEREFORE, the Debtor request entry of the Bidding Procedures Order and the Sale Order granting the relief requested herein and such other and further relief as is just and proper.

Dated: June 21, 2021                **FLASTER/GREENBERG P.C.**

/s/ *William J. Burnett*
William J. Burnett (Bar No. 75975)
Harry J. Giacometti (Bar No. 55861)
1835 Market Street, Suite 1050
Philadelphia, PA 19103
(215) 279-9383 Telephone
(215) 279-9394 Facsimile
william.burnett@flastergreenberg.com

PROPOSED COUNSEL FOR THE
DEBTOR-IN-POSSESSION

8339687 v1