## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | CHAPTER 11 |
| MIDNIGHT MADNESS DISTILLING LLC | CASE NO. 21-11750 (MDC) |

### MOTION OF DEBTOR FOR ENTRY OF INTERIM AND
### FINAL ORDER DETERMINING ADEQUATE ASSURANCE
### OF PAYMENT FOR FUTURE UTILITY SERVICES

Midnight Madness Distilling LLC (the "Debtor"), through its attorneys, Flaster Greenberg PC, hereby submits this motion pursuant to Sections 105(a) and 366 of Title 11, Chapter 11 of the United States Code (the "Bankruptcy Code") for the entry of an interim Order, substantially in the form attached hereto (the "Interim Order") and a final order (the "Final Order") prohibiting utility providers from altering or discontinuing services on account of prepetition invoices and determining adequate assurance of payment for future utility services (the "Motion"). In support of this Motion, the Debtor respectfully states as follows:

### JURISDICTION

1.      This Court has jurisdiction of this Motion pursuant to 28 U.S.C. sections 157 and 1334. Venue of this case in this district is proper pursuant to 28 U.S.C. sections 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§105(a) and 366.

### FACTUAL BACKGROUND

2.      The Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code") on June 21, 2021 (the "Petition Date") and has continued in possession of its property and operating its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtor is a Pennsylvania limited liability company and operates a distillery and packaging operation in Bucks County, Pennsylvania.  It employs approximately 80 individuals on a full and part-time basis.

4.      In connection with the operation of its business, the Debtor obtains electric, water, sewer, telephone, internet, trash removal and other similar utility services provided by a number of utility companies (the "Utility Providers")[1].  Exhibit "A" attached hereto provides a list of the 8 separate Utility Providers who rendered services to the Debtor as of the Petition Date (the "Utility Service List").  The Debtor pays the Utility Providers between $6,000 and $9,500 on a monthly basis for services rendered.

5.      Preserving utility services on an uninterrupted basis is essential to the Debtor's ongoing operations and the health and safety of the Debtor's employees.  Indeed, any interruption of utility services, even for a brief period of time, would likely disrupt the Debtor's ongoing business operations and could seriously jeopardize the Debtor's reorganization efforts, and ultimately, its enterprise value and creditor recoveries.  It is therefore critical that utility services continue uninterrupted during this Chapter 11 case.

## RELIEF REQUESTED

6.      Section 366(a) of the Bankruptcy Code prevents utility companies from discontinuing, altering or refusing service to a debtor during the first twenty (20) days of a bankruptcy case.  However, thirty (30) days from the petition date, a utility company may discontinue its services, pursuant to section 366(e)(2) of the Bankruptcy Code, if a debtor has not furnished adequate assurance of payment.

---

[1] Although the Debtor believes that Exhibit "A" includes all of its Utility Providers, the Debtor reserves the right, without further order of this Court, to supplement the list if any Utility Provider has been omitted.  Additionally, the listing of an entity on Exhibit "A" is not an admission that such entity is a utility within the meaning of section 366 of the Bankruptcy Code.  The Debtor reserves the right to contest any such characterization in the future.

7.      By this Motion, the Debtor seeks the entry of interim and final orders: (a) determining that the Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code; (b) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding and on account of any perceived inadequacy of the Debtor's proposed adequate assurance; and (c) determining that the Debtor is not required to provide any additional adequate assurance, beyond what is proposed by this Motion.

8.      The Debtor intends to pay post-petition obligation owed to the Utility Providers in a timely manner.  Assuming the Court grants the Debtor's Motion for Authority to Use Cash Collateral, filed contemporaneously herewith, it will have sufficient cash on hand to pay such post-petition obligations.

9.      The Debtor maintains that its ability to utilize Cash Collateral is sufficient adequate assurance of payment.

10.     The Debtor believes that based upon a good relationship with the Utility Providers, the Utility Providers will conclude that any additional adequate assurance payments are unnecessary.  To the extent that a Utility Provider objects to the adequate assurance provided by the Debtor at any time, the Debtor requests authority to resolve, in its sole discretion, any such objection by mutual agreement with the Utility Provider and without further order of the Court and, in connection with any such agreement, in its sole discretion, provide a Utility Provider with additional adequate assurance of payment, including but not limited to, cash deposits, pre-payments, and other forms of security, without further order of this Court if the Debtor believes such additional assurance is reasonable.

11.     To the extent that Debtor subsequently identifies additional providers of utility services or determines that a Utility Provider is not a utility provider, the Debtor seeks authority,

3

in its sole discretion, to amend the Utility Service List to add or remove any Utility Provider.
For those Utility Providers that are subsequently added to the Utility Service List attached
hereto, the Debtor will serve a copy of this Motion, along with the applicable portion of the
amended Utility Service List and the Interim and Final Order, as appropriate, on such Utility
Provider.

12.     All Utility Providers, including subsequently added Utility Providers, shall be
prohibited from altering, refusing, or discontinuing utility services to the Debtor absent further
order of the Court.

**BASIS FOR RELIEF**

13.     Section 366(c)(2) of the Bankruptcy Code provides that a utility company may
discontinue its services to a debtor if the debtor has not furnished adequate assurance of payment
within thirty (30) days after the petition date.

14.     Section 366(e) of the Bankruptcy Code requires only that a utility's assurance of
payment be "adequate."  Courts recognize that adequate assurance of payment does not
constitute an absolute guarantee of a debtor's ability to pay.  See Adelphia Bus. Solutions, Inc.,
280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002).  Courts have also recognized that, in determining the
requisite level of adequate assurance, bankruptcy courts should focus upon the need of the utility
for assurance, and to require that the debtor supply no more than that, since the debtor has a
conflicting need to conserve scarce financial resources.  See, e.g., In re Penn Cent. Transp. Co.,
467 F.2d 100, 103-04 (3d Cir. 1972).  Accordingly, demands by a utility for a guaranty of
payment should be refused when the Debtor's specific circumstances already afford adequate
assurance of payment.

15.     Based upon the foregoing, the Debtor believes that all of its Utility Providers have
adequate assurance of payment.  Contemporaneously herewith, the Debtor is seeking approval of

4

the use of cash collateral that will enable it to pay its operating costs, including utility costs, as they come due.  These factors, which the Court may consider when determining the amount of any adequate assurance payments, justify a finding that no adequate assurance payment is required in this Chapter 11 case.  In light of the foregoing, the Debtor respectfully submits that the Debtor's adequate assurance is more than sufficient to assure the Utility Providers of future payment.

16.     Nothing herein is intended to or should be construed as an admission of the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code.  The Debtor also expressly reserves its rights to contest any invoice of a Utility Provider under applicable non-bankruptcy law.

## **NOTICE**

17.     No trustee or examiner has been appointed in this Chapter 11 case.  Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) PNC Bank; (c) the twenty (20) largest unsecured creditors of the Debtor; (d) the Utility Providers identified in Exhibit "A"; and (e) other government agencies to the extent required by the Bankruptcy Rules and Local Rules, including any parties specifically affected by the relief sought herein.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

18.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests the entry of an order, substantially in the form attached hereto, granting the relief set forth in the Motion and granting such other and further relief as is just and proper.

5

**FLASTER GREENBERG P.C.**

Dated: June 22, 2021

By:     /s/ Harry J. Giacometti
        Harry J. Giacometti, Esq.
        William J. Burnett, Esq.
        1835 Market Street, Suite 1050
        Philadelphia, PA 19103
        (215) 587-5680
        harry.giacometti@flastergreenberg.com