**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | CHAPTER 11 |
| MIDNIGHT MADNESS DISTILLING LLC | CASE NO. 21-11750 (MDC) |

**DECLARATION OF CASEY PARZYCH IN SUPPORT OF**
**FIRST DAY MOTIONS AND APPLICATIONS**

I, Casey Parzych, being duly sworn, state the following under penalty of perjury:

1. I am a member and sole officer of Midnight Madness Distilling LLC ("MMD" or the "Debtor"), a limited liability company organized under the laws of the Commonwealth of Pennsylvania and the debtor in the above captioned chapter 11 case. As such, I oversee all aspects of the business of MMD. I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtor. If called upon to testify I would testify competently to the facts set forth herein.

2. I have been a member and officer of MMD since its inception in May of 2012. I am generally familiar with the Debtor's day-to-day operations, business and financial affairs, and books and records.

3. Except as otherwise indicated herein, all statements set forth in this declaration (this "Declaration") are based upon (a) my personal knowledge of and familiarity with the Debtor's operations, finances and restructuring efforts, (b) my review of relevant documents and information provided to me by employees of or professional advisors to the Debtor, and/or (c) my opinion based on my experience and knowledge concerning the Debtor's operations and financial and business affairs, including my general knowledge of the industry in which the Debtor operates.

1

4. On the date hereof (the "Petition Date"), the Debtor filed this Chapter 11 case (the "Chapter 11 Case") under Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Court").

5. The Debtor is requesting various forms of relief under to certain "First Day" motions and applications (collectively, the "First Day Pleadings") filed concurrently with this Declaration.

6. I submit this Declaration in support of the First Day Pleadings to provide an overview of the Debtor and its business. I am familiar with the contents of each of the First Day Pleadings, including the exhibits and schedules attached thereto. I believe that the relief requested in each First Day Pleading: (a) is necessary to preserve and maximize the value of the Debtor's estate; (b) is essential to the success of the Chapter 11 Case; and (c) serves the best interests of the Debtor's estate, the Debtor's creditors, and other parties in interest.

7. The relief requested in the First Day Pleadings is intended to minimize the potential adverse effects of the commencement of this Chapter 11 Case on the Debtor's on-going business operations and also to enable the Debtor to implement its strategy for success in this case.

8. This Declaration is divided into two sections. The first section provides a brief description of the Debtor's current organizational structure and operations, its current financial condition and the events leading to this Chapter 11 Case. The second section sets forth those facts which are most relevant to this Court's consideration of the First Day Pleadings, and is intended to supplement any other declarations submitted in direct support of any given motion or application.

**I.    Background of Debtor and Events Leading to Commencement of Chapter 11 Case**

9. MMD is a Pennsylvania limited liability company and operates a distillery and co-co-packaging plant in Bucks County, Pennsylvania.

10. MMD found its home in an historic building built by a turn-of-the-century cigar manufacturer, which prided itself on using unique and innovative techniques to make high quality cigars under a variety of different brand names. Over a century later, MMD carries on the tradition of the business that first occupied that space, by curating a collection of brands of liquor united by a commitment to innovation, authenticity, and ingenuity.

11. MMD combines its license to manufacture alcoholic products, and its state-of-the-art velcorin dosing system, to separate itself from other alcohol production and co-packaging facilities.

12. MMD employs approximately 80 individuals on a full and part-time basis and operates out of its main location, as well as several leased facilities.

13. MMD also does business under the name of "Faber Distilling" and "Theobald and Oppenheimer" and produces a variety of brands, such as Keystone Rail, Faber, Single Prop and Escape Goat.

14. The Debtor's corporate structure is as follows: MMD's ownership is divided into Classes A through G. The Class A members comprise 88.9927% of the ownership interests in MMD. Of the Class A membership interests, I own 47.1845%, while Anthony Lorubbio ("Lorubbio") owns 39.3861% and Angus Rittenburg owns 3.4222%.

15. MMD has an ownership interest in five (5) additional limited liability companies as follows:

    (a) 99% ownership interest in Splint, LLC;

    (b) 99% ownership interest in Brace, LLC;

3

Document Page 4 of 10

      (c) 99% ownership interest in Cane, LLC;

      (d) 99% ownership interest in Walker, LLC;

      (e) 50% ownership interest in Crutch, LLC; and

      (f) 99% interest in Spectre Distributing, LLC.

16. More information regarding the Debtor's business and services can be found at www.theobaldandoppenheimer.com.

17. Two key factors led to the Debtor's bankruptcy filing: (a) a default of MMD's obligations to PNC (as defined below); and (b) the inability of MMD to consummate the sale of its business.

18. In and after April of 2019, MMD borrowed funds from PNC Bank, N.A. pursuant to a Loan Agreement dated April 19, 2019. In addition, MMD financed certain of its machinery and equipment through PNC Equipment Finance (PNC Bank, N.A. and PNC Equipment Finance are hereinafter collectively referred to as "PNC").

19. Under a Security Agreement dated April 19, 2019 and a Cross Collateralization Agreement dated May 17, 2019, PNC has a first priority security interest in and lien on all of the Debtor's inventory, chattel paper, accounts, machinery, equipment, and general intangibles, and a second priority mortgage lien on the Debtor's real property located at 118 N. Main Street, Trumbauersville, Pennsylvania.

20. MMD failed to pay its obligations under an outstanding Line of Credit due on February 28, 2021, and therefore is in default under that facility.

21. Because all facilities with PNC are cross-collateralized and cross-defaulted, MMD's failure to make payment resulted in a default under all PNC loans.

22. As of the date of filing of this Bankruptcy Case, MMD is indebted to PNC in the approximate amount of $2.5 million, without any means to repay that obligation immediately.

23. In addition, prior to the filing, MMD was in negotiations with XO Energy Worldwide, LLP and its affiliates of which it is the sole member of (AgTech VI, LLC and EtOH Worldwide, LLC) and its affiliated companies (collectively, "XO") to purchase the Debtor's business as a going concern. The proposed sale was not consummated for a number of reasons, including the inability to for the Debtor obtain the consent of minority member Lorubbio.

24. The contentious nature of the relationship between Lorubbio and me has been evident since he was removed as Chief Executive Officer of MMD in January of 2020. Since that time, Lorubbio has unreasonably frustrated any and all efforts to effectively deal with the obligations to PNC and to transfer the operation of the business and assets of MMD to XO.

25. In fact, Lorubbio recently initiated litigation in the Court of Common Pleas of Bucks County against me personally.

26. Without an outside investment and continuation of support from XO, the Debtor will be unable to pay debt service and continue its operations.

27. In fact, XO has made a substantial investment in MMD's business already. For example, since February of 2021, XO had leased certain canning machinery to MMD (at a below market rate) which has generated about 60% of the Debtor's current revenue.

28. XO has committed significant funds to the Debtor's operation with the hopes of entering into more long-term, acceptable and stable solution with Debtor.

29. In light of the pending PNC default, XO has given an ultimatum to MMD, requiring it to either sell its assets in a Chapter 11 Section 363 sale or face withdrawal of XO's

5

support. One of the other actions that MMD has taken is its filing of a Section 363 Motion to approve a sale of its assets to XO.

30. At this point, MMD can't survive without XO. Without approval of a sale with XO, MMD will likely be liquidated, leaving MMD's secured lenders with far less than their debt, the trade creditors with nothing, and approximately 80 employees out of a job.

31. As a result of the foregoing issues, the Debtor finds that its best alternative to save its ongoing business for the benefit of its employees and to facilitate a payment to its creditors is to commence this bankruptcy case.

## II.     Facts Supporting the First Day Pleadings

32. Concurrently with the filing of their chapter 11 petitions, the Debtor has filed the First Day Pleadings. The relief requested in each of the First Day Pleadings described below constitutes a critical element in preserving the value of the Debtor's estate for the benefit of all parties in interest.

### A.     Cash Collateral Motion

33. MMD filed an Emergency Motion for Authority to Use Cash Collateral (the "Cash Collateral Motion").

34. By the Cash Collateral Motion, the Debtor seeks an order authorizing interim and permanent use of PNC's cash collateral.

35. The background of the lending relationship between MMD and PNC is described above, and in more detail in the Cash Collateral Motion.

36. It is essential to the continued operation of the Debtor's business that it obtains the use of cash collateral in order to meet obligations such as payroll, utility payments and other ordinary course day-to-day operations expenses. The relief sought in the Cash Collateral Motion is appropriate because PNC will be adequately protected, as the Debtor is willing to grant

6

replacement liens in the Debtor's post-petition Cash Collateral, and all other postpetition assets, to the same extent, priority, and validity as his prepetition liens, to the extent the Debtor diminishes such Cash Collateral.

37. In addition, PNC will receive adequate protection payments in accordance with the terms of its pre-petition loan documents.

38. At this point, PNC has consented to the Debtor's use of Cash Collateral in accordance with the terms of a Stipulation, submitted in connection with the Motion.

### B. Wage Motion

39. MMD filed a Motion to Pay Pre-Petition Wages, Salaries and Related Obligations (the "Wage Motion").

40. By the Wage Motion, the Debtor is attempting to minimize the personal hardship that the Debtor's employees would suffer if pre-petition employee related obligations are not paid when due or as expected, and to maintain morale and stability in the Debtor's workforce during this critical time.

41. The Debtor is seeking authority to pay and honor certain prepetition claims for prepetition wages, federal and state withholding taxes and other amounts withheld (including garnishments, Employees' share of insurance premiums and taxes) and health and other benefits.

42. MMD employs approximately 50 individuals on a full and part-time basis, whose continued employment is necessary to the Debtor's business operations.

43. The Debtor's normal payroll period covers a biweekly period beginning every other Wednesday through the following Tuesday. The approximate gross payroll amount is $110,000. A list of the employees and their wages for the pay period is available for the Court's review.

44. MMD pays its employees every other Friday, and the most recent pre-petition period ended on June 2, 2021. Accordingly, the Debtor has accrued gross wages, salaries and other related obligations from June 3, 2021 through the Petition Date.

45. I will be seeking payment of any compensation or salary in the Wage Motion. My salary is based upon biweekly gross compensation in the amount of $2,950.00.

### C. Utilities Motion

46. MMD has filed a Motion for Entry of Interim and Final Order Determining Adequate Assurance of Payment for Future Utility Services ("Utilities Motion").

47. In connection with the operation of the Debtor's business, the Debtor obtains water, sewer, electricity, gas, internet, telephone, and other similar utility services provided by a number of utility companies (the "Utility Providers"). A list of the Utility Providers and corresponding accounts is attached to the Utilities Motion as Exhibit "A" and incorporated herein by reference (the "Utility Service List").

48. MMD is current with all Utility Providers.

49. Preserving the utility services on an uninterrupted basis is essential to MMD's ongoing business operations and, therefore, to the success of its reorganization. Any interruption of utility services, even if for a brief period of time, would disrupt the Debtor's business operations, thereby negatively impacting Debtor's business and jeopardizing the Debtor's reorganization efforts, and ultimately, creditor recoveries. It is therefore, critical that utility services continue uninterrupted during this Chapter 11 Case.

50. By its Utility Motion, MMD seeks the entry of interim and final orders: (a) determining that their Utility Providers have been provided with adequate assurance of payment within the meaning of 366 of the Bankruptcy Code; and (b) prohibiting the Utility Providers

8

from altering, refusing, or discontinuing services on account of prepetition amounts outstanding, which the Debtor believes there are none, and on account of any perceived inadequacy of the Debtor's proposed adequate assurance; and (c) and determining that the Debtor is not required to provide any additional adequate assurance, beyond what is proposed by the Utility Motion.

### D. Retention Applications

51. MMD has filed an Application to retain the firm of Flaster Greenberg PC as its bankruptcy counsel.

52. In addition, MMD intends to file additional retention applications as follows:

(a) Wm. F. Comly & Son, Inc. to prepare and implement a marketing program to promote the sale of MMD's assets; and

(b) An accountant and/or financial advisor for the purpose of providing accounting services to MMD in connection with this Case.

53. The employment of these professionals is critical to enable MMD to fulfill its bankruptcy obligations and to succeed in this Case.

### III. Conclusion

54. For the reasons stated herein and in each of the First Day Pleadings filed concurrently or in connection with the commencement of this Bankruptcy Case, it is my view that granting the relief requested in the Pleadings is vital to the operations of MMD and the success of its Chapter 11 Case.

I hereby affirm under penalty of perjury that the matters set forth herein are true and correct to the best of my knowledge, information and belief.

_____
**Casey Parzych**