UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | CHAPTER 11 |
| MIDNIGHT MADNESS DISTILLING LLC | CASE NO. 21-11750 (MDC) |

### ORDER (A) AUTHORIZING INTERIM USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION; (B) SCHEDULING FINAL HEARING AND PRESCRIBING FORM AND MANNER OF NOTICE; AND (C) GRANTING RELATED RELIEF

AND NOW, this 29th day of June, 2021, upon consideration of the Debtor's Emergency Motion for use of its Cash Collateral pursuant to 11 U.S.C. § 363 (the "Motion"), and a hearing having been held, and in accordance with the Stipulation between the Debtor and PNC (the "Stipulation"), it is hereby

ORDERED that the Stipulation attached hereto as Exhibit 1 is hereby approved and incorporated herein by reference; and it is further

ORDERED that, a further hearing to consider the Motion is scheduled for August 25, 2021 at 11:30 a.m. in Courtroom No. 2, United States Bankruptcy Court for the Eastern District of Pennsylvania, US Courthouse, 900 Market Street, Philadelphia PA 19107, and any objections to the Debtor's Motion must be filed with the Clerk of the Bankruptcy Court, and served upon counsel for the Debtor, Harry J. Giacometti on or before August 23, 2021 at 5:00 pm; and it is further

ORDERED that, a copy of this Order shall be served by the Debtor, or its counsel, by regular mail on the United States Trustee, the Debtor's secured creditors, all persons requesting notices herein, and the Debtor's twenty (20) largest unsecured creditors as identified in its bankruptcy petition, within five (5) days of receipt of a copy of this Order; and it is further

ORDERED that if notice is given in the manner provided above, said notice shall be sufficient and proper and in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of this Court.

BY THE COURT:

July 2, 2021

_____
Magdeline D. Coleman
Chief United States Bankruptcy Judge

8372432 v1
C:\Users\maleskjl\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\9VJ4S7VU\First Interim Cash Collateral Order Revised.DOC

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| Midnight Madness Distilling LLC, | : | Case No. 21-11750 (MDC) |
| | : | |
| Debtor. | : | |
| | : | |

**STIPULATION AUTHORIZING DEBTOR TO USE CASH COLLATERAL
FOR A LIMITED PERIOD OF TIME PURSUANT TO
SECTION 363(C)(2) OF THE BANKRUPTCY CODE**

This Stipulation authorizing the Debtor to Use Cash Collateral Pursuant to Section 363(c)(2) of the Bankruptcy Code (the "Stipulation") is entered into this 22nd day of June 2021, by and between Midnight Madness Distilling LLC (the "Debtor"), by their attorneys, Flaster Greenberg P.C, and PNC Bank, National Association ("PNC Bank") and PNC Equipment Finance, LLC ("PNC EF", and collectively with PNC Bank, "PNC"), by its attorneys, Dilworth Paxson LLP. The Debtor and PNC stipulate and agree as follows:

1.  A Voluntary Petition under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §101-1330, the "Bankruptcy Code") was filed by the Debtor on June 21, 2021 (the "Petition Date"). Since the Petition Date, the Debtor has remained in possession of its assets and is operating its business as a debtor-in-possession pursuant to Sections 107 and 1108 of the Bankruptcy Code.

2.  The Debtor is a Pennsylvania limited liability company and operates a distillery and co-packaging plant in Bucks County, Pennsylvania. MMD combines its license to manufacture alcoholic products, and its state-of-the-art velcorin dosing system, to separate itself from other alcohol production and co-packaging facilities. MMD also does business under the

name of "Faber Distilling" and produces a variety of brands, such as Keystone Rail, Faber, Single Prop and Goat.

3. The Debtor owns the real property located at 118 Main Street, Trumbauersville, PA 18970 (the "Real Property").

## FACTUAL BACKGROUND

### A. The PNC Bank Loans

4. On or about April 19, 2019, the Debtor executed a Committed Line of Credit Note in favor of PNC Bank (the "Line of Credit Note") for a line of credit with a maximum principal amount of $250,000 (the "Line of Credit"), along with a Loan Agreement dated April 19, 2019 (the "Loan Agreement").

5. Pursuant to the Line of Credit Note, the Debtor is required to make monthly interest payments to PNC Bank (for the amount of accrued interest) on or before the 19th day of each month. In addition, all outstanding principal and accrued interest is due and payable on or before the "Expiration Date," which was initially defined as April 19, 2020.

6. On or about April 19, 2019, the Debtor executed a Security Agreement (the "Security Agreement"), which provides PNC with a security interest in "all personal property of the [Debtor]", including the categories of personal property described in detail therein. The security interest granted in the Security Agreement secures all obligations owed by the Debtor to PNC Bank or to any other direct or indirect subsidiary of The PNC Financial Services Group, Inc. (which includes PNC EF).

7. On or about June 7, 2019, the Debtor executed a Term Note in favor of PNC Bank (the "Term Note") in the principal amount of $800,000 (the "Term Loan," and collectively with

the Line of Credit, the "PNC Bank Obligations"). The Term Note requires the Debtor to make monthly payments to PNC Bank equal to $13,333.33, plus all accrued interest, on or before the 7th day of each month.

8. As collateral for the PNC Bank Obligations (and any other obligations owed by the Debtor to PNC Bank), on or about June 7, 2019, the Debtor executed an Open-End Mortgage (the "PNC Mortgage"), which provided PNC Bank with a mortgage on the Real Property. The Mortgage was recorded with the Bucks County Recorder of Deeds on August 8, 2019 at Instrument No. 2019042589.

9. The terms of the PNC Bank Loan Documents were amended from time to time pursuant to: (A) an Amendment to Loan Documents dated June 7, 2019; (B) a Waiver and Amendment to Loan Documents dated February 28, 2020; (C) an Amendment to Loan Documents dated April 29, 2020; and (D) a Waiver and Amendment to Loan Documents dated November 16, 2020 (collectively, the "Amendments", and collectively with the Line of Credit Note, the Loan Agreement, the Security Agreement, the Term Note, the PNC Mortgage, and any other documentation executed or issued in connection therewith, the "PNC Bank Loan Documents").

10. By letter dated January 8, 2021 (the "PNC Bank Deferral Letter"), PNC Bank agreed to a three-month deferral of principal and interest payments due for the Term Loan. All accrued interest was due and payable at the end of the three-month deferral period, with the deferred principal payments due upon maturity or acceleration of the Term Loan.

11. Pursuant to the Amendments, the Expiration Date of the Line of Credit was extended from time to time to February 28, 2021. The Debtor did not pay the outstanding

3

balance of the Line of Credit by the February 28, 2021 Expiration Date, and the Debtor is therefore in default of the terms of the Line of Credit Note.

12. The Line of Credit Note and the Term Note are cross-defaulted, such that the Debtor's default under the Line of Credit Note is also an event of default under the Term Note.

### B. The PNC EF Obligations

13. On or about April 16, 2019, the Debtor and PNC EF executed a Master Loan and Security Agreement (the "Master Agreement") whereby PNC EF, in its discretion and subject to certain conditions and due diligence, agreed from time to time to loan money to the Debtor for the acquisition of equipment. Pursuant to the Master Agreement, each of these loans would be evidenced by separate promissory notes from the Debtor.

14. The Master Agreement provides PNC with a security interest in the collateral described therein, including (A) all personal property of the Debtor, including the categories of personal property described in detail therein; and (B) the specific equipment acquired with the proceeds of each loan. The security interest granted in the Master Agreement secures all obligations owed by the Debtor to PNC EF or to any other direct or indirect subsidiary of The PNC Financial Services Group, Inc. (which includes PNC Bank).

15. Accordingly, the PNC Bank Obligations and the PNC EF Obligations are cross-collateralized with respect to the Debtor's personal property.

16. On or about April 16, 2019, the Debtor executed a Term Note in favor of PNC EF (the "PNC EF Term Note") in the principal amount of $1,258,639.80 (the "PNC EF Term Loan"). The PNC EF Term Note requires the Debtor to make monthly payments to PNC EF equal to $20,977.22, plus all accrued interest, on or before the 22nd day of each month.

17. On or about May 15, 2019, the Debtor executed an Equipment Line of Credit Note in favor of PNC EF (the "PNC EF Line of Credit Note") in the maximum principal amount of $1,141,360.20 (the "PNC EF Line of Credit", and collectively with the PNC EF Term Loan, the "PNC EF Obligations). Pursuant to the terms of the PNC EF Line of Credit Note, the Debtor would submit certain Requests for Advances to PNC EF (collectively, the "Requests for Advances") to draw on the line of credit for the acquisition of equipment.

18. The payment requirements for the PNC EF Line of Credit are set forth in the individual Requests for Advances executed by the Debtor. Currently, the Debtor is required to make monthly payments to PNC EF of $13,078.02 each on account of the PNC EF Line of Credit.

19. By letter dated November 16, 2020 (the "PNC EF Deferral Letter", and collectively with the Master Agreement, the PNC EF Term Note, the PNC EF Line of Credit Note, the Requests for Advances, and any other documentation executed or issued in connection therewith, the "PNC EF Loan Documents"), PNC EF agreed to a three-month deferral of payments due for each of the PNC EF Obligations. All accrued interest was due and payable at the end of the three-month deferral period, with the deferred principal payments due upon maturity or acceleration of the PNC EF Obligations.

20. The PNC EF Obligations are cross-defaulted with the PNC Bank Obligations, such that an event of default with respect to any of the PNC Bank Obligations (including the maturity default under the Line of Credit Note) constitutes an event of default with respect to each of the PNC EF Obligations.

E. **Current Amounts Owed to PNC**

21. For purposes of this Stipulation, the PNC Bank Obligations and the PNC EF Obligations are collectively referred to as the "Existing Obligations".

22. For purposes of this Stipulation, the PNC Bank Loan Documents and the PNC EF Loan Documents are collectively referred to as the "Loan Documents".

23. As of the Petition Date, the amounts owed to PNC Bank on account of the Existing Obligations, excluding legal fees and costs, were as follows:

**PNC Term Loan:**

| | |
|---|---|
| Principal: | $533,333.40 |
| Interest: | $ 6,315.89 |
| Late Charge: | $ 100.00 |
| Total: | $539,749.29 |

**PNC Line of Credit**

| | |
|---|---|
| Principal: | $175,000.00 |
| Interest: | $ 1,880.04 |
| Late Charges: | $ 195.03 |
| Total: | $177,075.07 |

**PNC EF Term Loan:**

| | |
|---|---|
| Principal: | $860,070.53 |
| Interest: | $ 8,833.59 |
| Total: | $868,904.12 |

**PNC EF Line of Credit:**

| | |
|---|---|
| Principal: | $904,838.06 |
| Interest: | $ 902.35 |
| Total: | $905,740.41 |

      **GRAND TOTAL:**    **$2,491,468.89**[1]

24. By virtue of the Security Agreement, the PNC Mortgage (to the extent there are any rents or other proceeds from the Real Property), and the Master Agreement, the Existing Obligations are secured by the Debtor's Cash Collateral, as that term is defined in Section 363(a) of the Bankruptcy Code.

### Cash Collateral Agreement

25. The Debtor has requested that PNC consent to the Debtor's use of Cash Collateral. PNC hereby consents to the limited use of cash collateral by the Debtor for the payment of administrative expenses, consisting of expenses incurred in the ordinary course of business after the Petition Date as set forth in the budget attached hereto as Exhibit A, subject to the terms and conditions herein. The cumulative, aggregate Cash Collateral expended during any calendar month during the term of this Stipulation shall not exceed the aggregate monthly expenditures allocated to such month as reflected in the Budget by more than ten percent (10%) for any such individual purpose or more than ten percent (10%) for all purposes in the aggregate in any calendar month (the "Acceptable Variance"), absent prior approval by PNC.

26. The Budget includes certain estimated payments to professionals to be retained by the Debtor in this bankruptcy, including legal counsel, accountants, and a sale broker. PNC has approved of the payment of these professional fees from Cash Collateral, consistent with the Budget (and any Acceptable Variance) and subject to approval by this Court.

---

[1] In addition to the Existing Obligations, the Debtor is obligated to PNC Bank for an outstanding PPP loan in the principal amount of $441,855.00 (the "PPP Loan"). The PPP Loan is unsecured and, therefore, not included in this Stipulation. It is anticipated that the Debtor will apply for forgiveness of the PPP Loan pursuant to the terms of the PPP loan program at the appropriate time. Nothing in this Stipulation or otherwise shall be deemed a waiver by PNC Bank of any rights with respect to the PPP Loan or the obligations owed by the Debtor with respect thereto.

27. The Budget also includes certain amounts for equipment leases that are accruing, but not yet owed. These amounts are included in the Budget solely for disclosure purposes to show the accruals. PNC has not consented to these amounts being paid from Cash Collateral and reserves all rights respect to these lease obligations.

28. During the term of this Stipulation, the Debtor shall make timely monthly payments to PNC Bank and PNC EF, as appropriate, on account of the Existing Obligations in the amounts and on the dates provided in the applicable Loan Documents (collectively, the "PNC Payments"). The Debtor shall be permitted to make the PNC Payments to PNC whether or not such payments are included in the Budget.

29. As security for the use of Cash Collateral and in order to provide adequate protection of PNC's interests in the Cash Collateral, the Debtor acknowledges and agrees that:

(a) PNC is hereby granted as adequate protection for PNC's interest in Cash Collateral and as security for all indebtedness and obligations of the Debtor to PNC, a first priority replacement lien on all of the Debtor's property of any nature or type, whether acquired or arising Pre-Petition or Post-Petition, and including without limitation all present and future accounts, inventory, machinery, equipment, instruments, documents, permits, general intangibles, together with the proceeds and product of and replacements to the foregoing;

(b) The security interest and replacement liens granted to PNC as referred to in the preceding Paragraphs shall be:

(1) Of the same order, extent and priority as to all Post-Petition property of the Debtor as existed Pre-Petition;

(2) Limited to the amount of Cash Collateral used by the Debtor.

8

(c) All of the security interests and liens granted hereunder are hereby deemed to be effective on the Petition Date without the necessity of taking any action which may be required under applicable law to perfect such security interests or liens and shall continue in full force and effect and shall survive termination of this Stipulation.

(d) The items in Subparagraphs (a) though (d) of this Paragraph shall collectively be referred to as the "Post-Petition Collateral".

30. As additional adequate protection of PNC's interest in the Cash Collateral, PNC Bank and PNC EF shall each be allowed an administrative claim under Section 503(b)(1) and Section 507(a)(1) of the Bankruptcy Code to the extent that the liens granted herein are insufficient to adequately protect their respective interests in the Cash Collateral which shall be entitled to priority pursuant to Section 507(b) of the Bankruptcy Code.

31. The Debtor shall at all times maintain and keeps their books and records, including without limitation accounts receivable, cash receipts and cash disbursements, current and updated so all business activities will be posted to such books and records with original entry in accordance with ordinary business practices.

32. The Debtor shall deliver to PNC Bank:

(a) A monthly report of its respective cash disbursements summarized in the same way as the budget are summarized on or before the 20th day of each month (the "Monthly Reports"), with the first Monthly Report to be provided on or before July 20, 2021 and provide information regarding cash disbursements during the month of June 2021;

(b) An accounting with respect to the respective Debtor's cash on hand on the Petition Date;

(d)    Evidence that real estate taxes for the Real Property are current and that the Debtor's insurance coverage is in effect.

33.    The Debtor shall permit PNC and its representatives to conduct site inspections, appraisals, environmental audits, or any other requested evaluations, during regular business hours upon reasonable notice to the Debtor from time to time as PNC may request.

34.    (a)    Unless earlier terminated in accordance with Subparagraph (b), this Stipulation shall terminate on August 27, 2021;

(b)    If the Debtor fails to pay any sums to PNC Bank or PNC EF when due or perform timely any other obligation hereunder ("Default"), the Debtor shall, upon three business days written notice to the Debtor and its counsel, cease using Cash Collateral in which PNC maintains an interest.

35.    This Stipulation shall not be subject to any modification or amendment without the prior written consent of PNC and the Debtor or the approval of the Bankruptcy Court. This Stipulation shall be binding upon PNC and the Debtors and their respective successors and assigns.

36.    No rights are intended to be created hereunder for the benefit of any third party, or creditor, or any direct, indirect, or incidental beneficiary. This Stipulation shall inure to the benefit of and be binding upon PNC, the Debtor, and their respective successors and assigns.

37.    The performance of PNC under this Stipulation is expressly conditioned upon the entry of an Order by the Bankruptcy Court approving this Stipulation.

38.    It is agreed that all terms and provisions of the Loan Documents between the Debtor and PNC shall remain in full force and effect.

39. The Debtor hereby agrees that all liens and/or security interests granted to PNC pre-petition shall continue post-petition in full force and effect, without further perfection or filing under the Uniform Commercial Code by PNC.

40. The Debtor hereby acknowledges and agrees that the Existing Obligations described in Paragraph 21 of this Stipulation are allowed claims against the Debtor in the amounts set forth therein and that PNC Bank and PNC EF, as applicable, holds valid, perfected and enforceable liens on and security interests in the collateral described in the Security Agreement, the PNC Mortgage, and the Master Agreement.

41. All reports and notices hereunder shall be delivered by electronic mail to the following persons at the addresses indicated, which addresses may be changed from time to time upon prior written notice to all parties:

| | |
|---|---|
| If to PNC: | Gary A. Best<br>gary.best@pnc.com |
| With a copy to: | Jennifer L. Maleski, Esquire<br>Dilworth Paxson LLP<br>jmaleski@dilworthlaw.com |
| If to Debtor: | Casey Parzych<br>casey@theoandopp.com |
| With a copy to: | Harry J. Giacometti, Esquire<br>William J. Burnett, Esquire<br>Harry.Giacometti@flastergreenberg.com<br>William.Burnett@flastergreenberg.com |

42. No waiver of one or more of the provisions of this Stipulation shall be effective unless set forth in writing and signed by the parties hereto.

43. The rights, power, and remedies of PNC and the Debtor provided herein are cumulative and not exclusive of any rights, power, or remedy provided by law or equity, and no

failure or delay on the part of PNC or the Debtor in exercise of any rights, power, or remedy shall operate as a waiver thereof.

44. This Stipulation shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

IN WITNESS WHEREOF, the Debtor and PNC have caused this Stipulation to be executed as of the day and year first above written.

Flaster/Greenberg P.C.

By: _____
Harry J. Giacometti, Esquire
William J. Burnett, Esquire
Counsel for the Debtor

Dilworth Paxson LLP

By:   /s/ Jennifer L. Maleski
Jennifer L. Maleski, Esquire
Counsel for PNC Bank, N.A. and
PNC Equipment Finance, LLC