

## Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 2NKHHM7X2JM214870 | 18 | KENW | [T370]* | TK | | |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 10176 | | 78466685 | 3 | PA | 01-13-2018 |

**Full Name of Owner(s)**
MIDNIGHT MADNESS DISTILLING LLC
230 TRUMBAUERSVILLE RD
QUAKERTOWN, PA 18951

**Vehicle Brand(s)**

**Liens(s)**
[PACCAR FINANCIAL CORP
240 GIBRALTAR ROAD SUITE 200
HORSHAM, PA 19044]*

Lien Date: 01-12-2018
ELT Number: 91602971202
LTN: ▮▮▮▮▮7212▮

**Odometer Brand(s)**

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: 4FUKN7OPBV    **THIS IS NOT A TITLE**
This is an official Premier eTitleLien® Report
generated by a customer of Decision Dynamics, Inc.



DocuSign Envelope ID: 67AC8EA1-54C8-4F08-8C48-DE29ABC6352B

## PACCAR FINANCIAL

### SECURITY AGREEMENT
### RETAIL INSTALLMENT CONTRACT

DEC 13

**SELLER**

| | |
|---|---|
| NAME | North Carolina Kenworth, Inc. |
| PLACE OF BUSINESS | 6442 Burnt Poplar Road<br>Greensboro, NC 27409 |
| MAILING ADDRESS | 6442 Burnt Poplar Road<br>Greensboro, NC 27409 |

Seller hereby sells, and Buyer (meaning all undersigned buyers, jointly and severally) hereby purchases, subject to the terms set forth below and on any attachments hereto, the following described vehicle(s) (the "Vehicle(s)"), delivery and acceptance of which in good order Buyer hereby acknowledges.

Buyer hereby grants a security interest in the Vehicle(s), and any additional collateral (collectively the "Collateral"), and any Additions and Accessions thereto (as defined below), to Seller and its assigns to secure prompt payment of the indebtedness incurred by this Contract and performance of Buyer's other obligations, including any additional indebtedness incurred as provided by this Contract and any extensions or renewals of the obligations and future advances and is subject to paragraph 16 "Cross Collateral and the other provisions below. The security interest extends to the proceeds of the Collateral and the proceeds of any insurance policy.

Buyer also acknowledges that Seller has offered to sell the Vehicle(s) for the cash price indicated, but that the Buyer has chosen to purchase on the terms and conditions of this Contract.

**BUYER**

| | |
|---|---|
| NAME | MIDNIGHT MADNESS DISTILLING, LLC |
| STREET ADDRESS | 2300 Trumbauersville Rd.<br>Quakertown, PA 18951 |
| MAILING ADDRESS | PO BOX 173<br>TRUMBAVERSVILLE, PA 18970 |

### DESCRIPTION OF VEHICLE(S) – COLLATERAL (for security purposes only)

| YEAR | MAKE | MODEL | VEHICLE ID NUMBER (VIN) | NEW/USED | PRICE OF VEHICLE |
|---|---|---|---|---|---|
| 2018 | Kenworth | T370 | 2NKHHM7X2JM214870 - with attached Hackney beverage body S/N 10711 H-178-437 | New | $112,341.00 |
| | | | | **Total:** | **$112,341.00** |

### DESCRIPTION OF TRADE-IN EQUIPMENT

| VEHICLE ID NUMBER (VIN) | ALLOWANCE | PAYOFF | PAYOFF DUE TO |
|---|---|---|---|
| | $0.00 | $0.00 | |
| **Total:** | | | |

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| CASH PRICE | Cash Price | $112,341.00 |
| | Sales Tax | $0.00 |
| | FET | $0.00 |
| | TOTAL CASH PRICE | $112,341.00 |
| DOWN PAYMENT | Net Trade-In | $0.00 |
| (a) | Cash | $12,000.00 |
| | TOTAL DOWN PAYMENT | $12,000.00 |
| (b) UNPAID CASH PRICE – (a minus b) | | $100,341.00 |
| (c) OTHER CHARGES | Document Preparation Fee | $0.00 |
| | Title Fee | $0.00 |
| | Other | $350.00 |
| | TOTAL OTHER CHARGES | $350.00 |
| (d) PRINCIPAL BALANCE (Basic Time Price) – (c plus d) | | $100,691.00 |
| (f) FINANCE CHARGE (Time Price Differential – See Section 17) (Estimated) | | $14,919.40 |
| (g) CONTRACT BALANCE (Time Balance – See Section 17) – (Estimated) (e plus f) | | $115,610.40 |

### PAYMENT SCHEDULE

The Contract Balance (item g) is payable to the Seller or his assignee based on the following schedule:

| First Installment | No. of Installments | Amount Each | Payment Frequency |
|---|---|---|---|
| 1. January 20, 2018 | 60 | $1,926.84 | Monthly |

Page 1 of Security Agreement dated on or about December 06, 2017 between MIDNIGHT MADNESS DISTILLING, LLC (Buyer) and North Carolina Kenworth, Inc (Seller) which includes, without limitation, an item of collateral with the following Vehicle Identification Number: 2NKHHM7X2JM214870.

CAT. NO. 1258A  FSCS 11/2016                                     PRINTED Dec-12-2017 2:13 PM PT

---

DocuSign Envelope ID: 67AC8EA1-54C8-4F08-8C48-DE29ABC6352B

## PACCAR FINANCIAL

### SECURITY AGREEMENT
### RETAIL INSTALLMENT CONTRACT

**BUYER REPRESENTS AND WARRANTS**

The Collateral is to be used for business and commercial purposes, and not for agricultural purposes or for personal, family or household use. The Collateral will be titled in the State of Pennsylvania.

Buyer's chief place of business is located at:

| | |
|---|---|
| STREET | 2300 Trumbauersville Rd. |
| CITY | Quakertown |
| COUNTY | Bucks |
| STATE | PA |
| ZIP CODE | 18951 |

### DELINQUENCY CHARGE

For each installment not paid when due, Buyer agrees to pay Seller a delinquency charge calculated thereon at the rate of 1½% per month for the period of delinquency or, at Seller's option, 5% of such installment, provided that such a delinquency charge is not prohibited by law, otherwise at the highest rate Buyer can legally obligate itself to pay and/or Seller can legally collect.

Buyer will immediately notify Seller in writing of any change in the above address or location. This contract is entered into in the State of North Carolina and is governed by its laws.

Page 2 of Security Agreement dated on or about December 06, 2017 between MIDNIGHT MADNESS DISTILLING, LLC (Buyer) and North Carolina Kenworth, Inc (Seller) which includes, without limitation, an item of collateral with the following Vehicle Identification Number: 2NKHHM7X2JM214870.

CAT. NO. 1258A  FSCS 11/2016                                     PRINTED Dec-12-2017 2:13 PM PT

DocuSign Envelope ID: 674C8EA1-54C8-4F08-8C48-DE29ABC6352B

**PACCAR FINANCIAL**

**SECURITY AGREEMENT
RETAIL INSTALLMENT CONTRACT**

**1. CERTIFICATE OF TITLE - LIENS.** Seller shall have no liability at all for any losses which occur because no insurance has been obtained or the coverage of the insurance which has been obtained is incomplete.

Buyer agrees that any Certificate of Title for the Collateral will show Seller's security interest (lien) and will be delivered promptly to Seller. Seller has the right to hold the Certificate of Title until Buyer pays all indebtedness and performs all other obligations under this Contract. Buyer promises not to give any other party a lien or security interest in the Collateral without Seller's written consent. Buyer promises not to part with possession of, sell or lease the Collateral without Seller's written consent. Buyer hereby:

(a) agrees that from time to time, at the expense of the Buyer, Buyer will promptly execute and deliver all further instruments and documents, and take all further action that may be necessary or desirable, or that Seller may request, in order to perfect or protect any security interest granted or purported to be granted hereby or to enable Seller to exercise and enforce its rights and remedies hereunder with respect to any of the Collateral.

(b) grants to Seller the power to sign Buyer's name and on behalf of Buyer to execute and file applications for title, transfers of title, financing statements, notices of lien and other documents pertaining to any or all of the Collateral.

**2. ASSIGNMENT.** Seller has the right to assign this Contract to PACCAR Financial Corp. If Seller does assign it, PACCAR Financial Corp. will take all of the Seller's right, title and interest under this Contract (including Seller's interest in the Collateral). Thereafter, the term "Seller" in this contract shall mean PACCAR Financial Corp. This means, among other things, that Buyer will be required to make the payments to PACCAR Financial Corp. directly to PACCAR Financial Corp. Buyer agrees that if Seller assigns this Contract, and PACCAR Financial Corp. sues Buyer to collect any amount Buyer owes to PACCAR Financial Corp. or to enforce any of Buyer's other obligations to PACCAR Financial Corp., Buyer will not assert any claim or defense Buyer has against Seller as a claim, defense, or setoff against PACCAR Financial Corp.

**3. INSURANCE.** Buyer agrees to keep the Collateral continuously insured against fire, theft, collision, and any other hazard Seller specifies by an insurance company Seller has approved. The amount of insurance shall be the full insurable value of the Collateral or the full amount of all obligations this Contract secures, whichever is greater. The insurance policy shall provide, in a form acceptable to Seller, for payment of any loss to Seller. Buyer shall deliver promptly to Seller certificates or, if requested, policies of insurance satisfactory to Seller, each with a loss-payable endorsement naming Seller or its assigns as loss payee as their interests may appear. The insurance policy shall provide that it can be canceled only after written notice of intention to cancel has been delivered to Seller at least ten (10) days before the cancellation date. If the Collateral is lost or damaged Seller shall have full power to collect any of all insurance proceeds and to apply them as Seller chooses either to satisfy any obligation secured by this Contract (whether or not due or otherwise matured), or to repair the Collateral. If Buyer obtains insurance from a company Seller has not approved, or fails to obtain any insurance Seller desires to protect its interests. If Seller does so, Buyer shall reimburse Seller upon demand for its expenses.

**4. TAXES.** Buyer agrees to pay before delinquency all sales and other taxes, license fees and other governmental charges imposed on the Collateral or its sale or use.

**5. USE OF COLLATERAL.** Buyer agrees to keep the Collateral in good repair, to prevent any waste, loss, damage, or destruction of or to the Collateral, to prevent any unlawful use of the Collateral, and not to make or allow to be made any significant change in the Collateral or in its chassis, body or special equipment, without Seller's written consent. Buyer assumes all risk of damage, loss or destruction of or to the Collateral, whether or not insured against. Seller may examine the Collateral wherever located at any time, and Buyer will inform Seller of the Collateral's location upon Seller's request.

**6. EXPENSES PAID BY SELLER.** Buyer agrees to reimburse Seller upon demand for any expenses paid by Seller such as taxes, insurance premiums, repair bills, title fees, or in the event of a default, to the fullest extent permitted by law, the expense of retaking, holding, preparing for sale, selling and the like including, (i) the fees of any attorneys retained by Seller, and (ii) all other legal expenses incurred by Seller. Buyer's obligation to pay the expenses shall be secured by this Contract.

**7. TRADE-INS.** If Buyer has traded in any property, Buyer represents and warrants that the description of it on the front of this Contract is accurate, that the title conveyed is good and its transfer rightful, and that the property is delivered free from any security interest or other lien or encumbrance.

**8. NO WARRANTY.** If the Vehicle is new, there is no warranty other than that of the manufacturer. If the Vehicle is used, it is sold "AS IS" and "WITH ALL FAULTS." **SELLER MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. UNLESS SET OUT IN WRITING AND SIGNED BY THE SELLER, THERE ARE NO OTHER WARRANTIES EXPRESS OR IMPLIED.**

**9. ADDITIONS TO COLLATERAL.** Anything added to the Collateral, including but not limited to engines, transmissions, tires, wheels, fifth wheels, radios and electrical equipment, tanks and any other body or structure that becomes part of the Collateral, shall constitute "Additions and Accessions" and shall be subject to Seller's security interest. All Additions and Accessions must stay with the Collateral if it is repossessed or returned to Seller.

**10. DEFAULT.** Time is of the essence in this Contract. The due dates for payments and the performance of the other obligations under this contract are among its most crucial provisions. Buyer shall be in default under this Contract upon the occurrence of any of the following:

Page 3 of Security Agreement dated on or about December 06, 2017 between MIDNIGHT MADNESS DISTILLING, LLC (Buyer) and North Carolina Kenworth, Inc. (Seller) which includes, without limitation, an item of collateral with the following Vehicle Identification Number: 2NKHHM7X2JM214870.

CAT. NO. 1258A, FSCS 11/2016

PRINTED Dec-12-2017 2:13 PM PT

---

DocuSign Envelope ID: 674C8EA1-54C8-4F08-8C48-DE29ABC6352B

**PACCAR FINANCIAL**

**SECURITY AGREEMENT
RETAIL INSTALLMENT CONTRACT**

(a) Buyer fails to pay on or before the due date the full amount of any scheduled payment, taxes, insurance premium, or other obligation secured by this Contract or under any other instrument or agreement;

(b) Buyer fails to perform any of Buyer's obligations under this Contract;

(c) Any representation Buyer has made in this Contract or in any credit application or financial statement Buyer has given in connection with the credit secured by the Contract turns out to be false;

(d) Any check, note or other instrument given for a payment is dishonored when presented for payment;

(e) The Collateral is seized or levied upon under any legal or governmental process or proceeding against Buyer or the Collateral;

(f) Buyer's death or subject to insolvency proceedings as defined in the Uniform Commercial Code or becomes subject to bankruptcy;

(g) Buyer defaults in the payment or performance of any other agreement in connection with any other obligation owed to PACCAR Financial Corp. or for borrowed money;

(h) Any merger of the borrower with or into any person, or any sale, conveyance, transfer, lease or other disposition (whether in one transaction or a series of transactions) of all or substantially all of the buyer's assets without the prior approval of PACCAR Financial Corp.;

(i) Any change in the Chief Executive Officer and/or the Chief Financial Officer of the Buyer without prior notification to PACCAR Financial Corp.; or

(j) Seller reasonably deems the Collateral in danger of misuse, confiscation, damage, or destruction.

**11. REMEDIES.** If Buyer defaults under this Contract, Seller may, at its option, with or without notice to Buyer:

(a) Declare this Contract to be in default;

(b) Declare the entire amount of the unpaid Time Balance, after deducting unearned Time Price Differential in accordance with the applicable state law, and other charges and indebtedness secured by this Contract immediately due and payable, without protest, presentment demand or notice (including but not limited to notice of intent to accelerate and notice of acceleration), all of which Buyer waives; and

(c) Exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws.

In addition to the foregoing and any other rights Seller has under the law in effect at the time of default, the following provisions shall apply:

(a) On Seller's demand, Buyer shall deliver possession of the Collateral to Seller at a place Seller designates reasonably convenient to both parties.

(b) Seller may enter any premises where the Collateral may be found and take possession of it without notice, demand, or legal proceedings, provided such entry is in compliance with law.

(c) Seller shall give Buyer at least ten (10) days written notice of any sale of the Collateral, which Buyer agrees to be reasonable notice. Notice shall be given at the address specified

in this Contract or other such address as Buyer may specify, in writing to Seller. Notice shall be effective when deposited in the mails, postage prepaid, addressed as provided above.

(d) Buyer agrees that it is liable for and will promptly pay any deficiency resulting from any disposition of the Collateral after default.

**12. NO WRONGFUL POSSESSION.** Buyer agrees that if Seller repossesses the Collateral or otherwise obtains possession of it, Seller will not be in wrongful possession of any property contained in the Collateral or attached to it in which Seller does not have a security interest. Seller agrees to make any such property available for Buyer to take back at a place reasonably convenient to both parties.

**13. VARIATIONS OF CONTRACT.** No provision of this Contract may be changed or amended unless by a written contract signed by Seller. Seller's acceptance of late payments does not mean that Seller is obligated to accept any late payments in the future. No waiver of any default shall operate as a waiver of any other default.

**14. ENTIRE AGREEMENT – SEVERABILITY.** This Contract and the attached Exhibits and Addenda is the complete and exclusive statement of rights and duties between Seller and Buyer. If any provision is held unenforceable, it shall be deemed omitted without affecting the enforceability of the remaining provisions.

**15. BAD CHECKS.** Whenever a check, draft or order given by or on behalf of Buyer for the purpose of payment of any obligation arising under this Contract has been dishonored for lack of funds or credit to pay the item, or because the account has been closed, or for any other reason, Seller or its assigns will assess and Buyer will promptly pay a $50 fee per dishonored item, or the maximum amount allowed by applicable law, if lower.

**16. CROSS COLLATERAL.** Buyer grants to Seller and any assignee of Seller a security interest in the Collateral to secure the payment and performance of all obligations and liabilities of Buyer to Seller or to such assignee of Seller, now existing or hereafter arising, whether under this Contract or any other agreement and whether due directly or by assignment; provided, however, upon any assignment of this Contract by Seller, the assignee shall be deemed, for the purpose of this paragraph, to be the only party with a security interest in the Collateral.

**17. TIME PRICE DIFFERENTIAL.** The parties agree that during the term of the Contract, the effective daily Time Price Differential ("TPD") shall be based on an interest rate equal to **5.4900**% percent per annum, accrued daily on the unpaid balance ("Buyer's Rate"). The TPD due each month based on the Buyer's Rate and assuming that all payments are timely made, the aggregate TPD will be **$14,919.40**. Early or late payments over the term of the Contract will cause the actual aggregate TPD, the Time Balance and the Total Time Sale Price to be different than disclosed. Any delay in payment could cause those amounts to be greater than disclosed, resulting in a larger

Page 4 of Security Agreement dated on or about December 06, 2017 between MIDNIGHT MADNESS DISTILLING, LLC (Buyer) and North Carolina Kenworth, Inc. (Seller) which includes, without limitation, an item of collateral with the following Vehicle Identification Number: 2NKHHM7X2JM214870.

CAT. NO. 1258A, FSCS 11/2016

PRINTED Dec-12-2017 2:13 PM PT

DocuSign Envelope ID: 674C8EA1-54C8-4F08-8C48-DE29ABC635 2B

# PACCAR FINANCIAL

## SECURITY AGREEMENT
## RETAIL INSTALLMENT CONTRACT

final or "balloon" payment. Early payments could cause those amounts to be less than disclosed, resulting in a smaller final or "balloon" payment or reduced number of payments. In no event shall Buyer be required to pay interest in excess of the maximum rate allowed by law of the state having jurisdiction over the transaction. The intention of the parties is to conform strictly to applicable state usury laws, which may reduce the Buyer's Rate to the maximum amount allowed under such usury laws now or hereafter in effect.

**18. FINANCIAL INFORMATION.** Buyer agrees to furnish Seller promptly with any financial statements or other information which Seller may reasonably request from time to time. Any and all financial statements will be prepared on a basis of generally accepted accounting principles, and will be complete and correct and fairly present Buyer's financial condition as of the date thereof. Seller may at any reasonable time examine the books and records of Buyer and make copies thereof.

**19. CHATTEL PAPER.** This Contract is to be sold only to PACCAR Financial Corp. and is subject to the security interest of PACCAR Financial Corp. The only copy of this Contract which constitutes "chattel paper" under the Uniform Commercial Code is the copy which is delivered to and held by PACCAR Financial Corp. No assignee or secured party other than PACCAR Financial Corp. will under any circumstances acquire any rights in, under or to this Contract or any sums due hereunder, except that PACCAR Financial Corp. may, by a separate written assignment signed by PACCAR Financial Corp. assign its interest received hereunder.

**20. PREPAYMENT.** Buyer shall have the right to prepay all or part of the principal indebtedness due under this Contract at any time. In consideration of such prepayment right, and as compensation to Seller for the loss of the benefit of its bargain, unless prohibited by applicable law, Buyer shall also pay to Seller a percentage of the amount of the principal indebtedness being prepaid equal to 1/12 of 1% (.0083) multiplied by the number of full months remaining in the

term of the Contract, or the maximum rate allowed under applicable law, if lower.

**21. MISCELLANEOUS.**
(a) This Contract shall be binding, jointly and severally, upon all parties described as the "Buyer" and their respective heirs, executors, representatives, successors and assigns and shall inure to the benefit of Seller, its successors and assigns.
(b) This Contract and any other evidence of the indebtedness given in connection herewith may be assigned by Seller to a third party, without notice to Buyer and Buyer hereby waives any defense, counterclaim or cross-complaint by Buyer against any assignee, agreeing that Seller shall be solely responsible therefor.
(c) Buyer acknowledges receipt of a true copy of this Contract, and waives acceptance thereof.
(d) This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. A photocopy or electronic signed copy of any such counterpart shall have the same force and effect as an original (ink) signature.

**22. WAIVER OF JURY TRIAL.** Except as otherwise provided by applicable law Buyer and Seller each waive any right to have a jury participate in resolving any dispute, whether sounding in contract, tort, or otherwise, between Buyer and Seller arising out of, connected with, related to or incidental to the relationship established between them in connection with this Contract or other instrument, document or agreement executed or delivered in connection therewith or the transactions related thereto. Buyer and Seller each hereby agree and consent that any such claim, demand, action or cause of action shall be decided by court trial without a jury and that either party may file an original counterpart or a copy of this Contract with any court as written evidence of the consent of the parties hereto to the waiver of their right to trial by jury.

Page 5 of Security Agreement dated on or about December 06, 2017 between MIDNIGHT MADNESS DISTILLING, LLC (Buyer) and North Carolina Kenworth, Inc. (Seller) which includes, without limitation, an item of collateral with the following Vehicle Identification Number: 2NKHHM7X2JM214870.

CAT. NO. 1258A  FSCS 11/2016                                                                                    PRINTED Dec-12-2017 2:13 PM PT

---

DocuSign Envelope ID: 674C8EA1-54C8-4F08-8C48-DE29ABC635 2B

# PACCAR FINANCIAL

## SECURITY AGREEMENT
## RETAIL INSTALLMENT CONTRACT

**NOTICE - SEE ALL PAGES FOR IMPORTANT TERMS WHICH ARE PART OF THIS CONTRACT.**

**WARNING: LIABILITY INSURANCE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS NOT INCLUDED UNDER THIS CONTRACT.**

### NOTICE TO BUYER

1. **DO NOT SIGN THIS CONTRACT BEFORE YOU HAVE READ IT OR IF IT CONTAINS ANY BLANK SPACES.**
2. **YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN.**
3. **UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE (TIME PRICE DIFFERENTIAL).**
4. **KEEP THIS CONTRACT TO PROTECT YOUR LEGAL RIGHTS.**

**BUYER ACKNOWLEDGES THAT A TRUE COPY OF THIS CONTRACT HAS BEEN RECEIVED, READ, AND WAS COMPLETELY FILLED IN BEFORE BEING SIGNED.**

SELLER:  North Carolina Kenworth, Inc.                             BUYER:  MIDNIGHT MADNESS DISTILLING, LLC

BY DocuSigned by:                                                  BY DocuSigned by:
*Mark Dunlap*                                                      *Casey Parzych*
—91C13B833A87A7...                                                 —BA8EC2F8ADC4E0...

Mark Dunlap, Branch Manager - Greensboro                           CASEY PARZYCH, MEMBER
DATE:  December 06, 2017                                           DATE:  December 06, 2017



Page 6 of Security Agreement dated on or about December 06, 2017 between MIDNIGHT MADNESS DISTILLING, LLC (Buyer) and North Carolina Kenworth, Inc. (Seller) which includes, without limitation, an item of collateral with the following Vehicle Identification Number: 2NKHHM7X2JM214870.

CAT. NO. 1258A  FSCS 11/2016                                                                                    PRINTED Dec-12-2017 2:13 PM PT

DocuSign Envelope ID: 674C8EA1-54C8-4F08-8C48-DE29ABC6352B

# PACCAR FINANCIAL

## SECURITY AGREEMENT
## RETAIL INSTALLMENT CONTRACT

DATE: December 06, 2017

TO: PACCAR Financial Corp.

Check one of the following:

☐ Yes, I want to access PACCAR Financial Online Services to make payments online. (You will receive an email welcome letter with instructions on how to sign up.)

Email Address: _____

☒ I am an existing PACCAR Financial Online Services customer, currently making payments online.

Email Address: _____ .Com

☐ No, I do not want to access PACCAR Financial Online Services. I prefer to receive a Coupon Book and understand that I will be subject to a one-time, non-refundable Administration Fee of $250.00 for choosing this option.

Reason: _____

By signing below, I understand that if payments are not made through PACCAR Financial Online Services, I am subject to a one-time, non-refundable Administration Fee of $250.00 to be added to my account.

BUYER: MIDNIGHT MADNESS DISTILLING, LLC

BY: _CASEY PARZYCH_ (DocuSigned)
CASEY PARZYCH, MEMBER
DATE: December 06, 2017

To register to make your payments online and to view our latest product offerings, please visit www.paccarfinancial.com.

PACCAR Financial Corp.
(800) 777-8525
www.paccarfinancial.com

Page 7 of Security Agreement dated on or about December 06, 2017 between MIDNIGHT MADNESS DISTILLING, LLC (Buyer) and North Carolina Kenworth, Inc. (Seller) which includes, without limitation, an item of collateral with the following Vehicle Identification Number: 2NKHHM7X2JM214870.

CAT. NO. 1258A  FSCS 11/2016

PRINTED Dec-12-2017 2:13 PM PT

---

DocuSign Envelope ID: 674C8EA1-54C8-4F08-8C48-DE29ABC6352B

# PACCAR FINANCIAL

## SECURITY AGREEMENT GUARANTY

Reference is made to the Security Agreement-Retail Contract ("Contract") dated December 06, 2017 between **North Carolina Kenworth, Inc.** ("Seller") and **MIDNIGHT MADNESS DISTILLING, LLC** ("Buyer").

For valuable consideration, the receipt of which is hereby acknowledged, and to induce Seller to enter into the Contract, Guarantor (meaning all undersigned Guarantors, if more than one, jointly and severally) hereby unconditionally guarantees to Seller and its assigns, regardless of the enforceability of the Contract, or any other circumstances which might affect the liability of Guarantor that (i) all Buyer's indebtedness under the Contract ("Debt"), including without limitation each installment thereof, will be paid in full when due, whether at stated maturity or maturity by acceleration or otherwise, in accordance with the terms of the Contract, and (ii) in case of any extension of time of payment or renewal of any of the Debt, it will be paid in full when due in accordance with the terms of such extension or renewal, whether at stated maturity or maturity by acceleration or otherwise. Failing payment when due of any amount so guaranteed for whatever reason, Guarantor will be obligated to pay such amount immediately, regardless of whether Seller has proceeded against Buyer or the Collateral (as defined in the Contract). Guarantor hereby waives notice of and consents to any extensions of the time of payment, renewals, releases of Collateral, or other indulgence from time to time granted to Buyer in respect of any or all of the Debt. Guarantor hereby waives demand of payment, presentation, protest, notice of sale or other disposition or release or other handling of the Collateral, and all other notices and demands whatsoever respecting the Debt or the Collateral. This Guaranty shall bind the Guarantor and the estate of Guarantor. This Guaranty shall be automatically reinstated if for any reason any payment in respect of the Debt shall be rescinded or must otherwise be restored, whether as a result of proceedings in bankruptcy or otherwise. Any of the undersigned Guarantors, if more than one, and any other party liable in respect of the Debt may be released without affecting the liability of any undersigned Guarantor or Guarantors not released. Seller may assign this guaranty to PACCAR Financial Corp., and if it does, PACCAR Financial Corp. shall have the same rights and remedies as if originally named herein in place of Seller. Guarantor hereby waives notice of acceptance of this guaranty. Guarantor hereby irrevocably waives and renounces any right or claim Guarantor would otherwise have against Buyer, whether by way of indemnification, subrogation, exoneration, right of reimbursement, contribution or otherwise, as a consequence of Guarantor making any payment under this Guarantee.

Dated this 6th day of December, 2017.

| INDIVIDUAL GUARANTOR | ADDRESS | PHONE |
|---|---|---|
| _CASEY PARZYCH_ (DocuSigned) <br> CASEY PARZYCH | 138 N MAIN ST <br> TRUMBAUERSVILLE, PA 18970 |  |

CAT. NO. 3854Aa  FSCS 01/2015

Page 1 of 1

PRINTED Dec-12-2017 2:13 PM PT

DocuSign Envelope ID: 674C8EA1-54C8-4F08-8C48-DE29ABC6352B

## PACCAR FINANCIAL

### SECURITY AGREEMENT GUARANTY

Reference is made to the Security Agreement-Retail Contract ("Contract") dated December 06, 2017 between **North Carolina Kenworth, Inc.**, ("Seller") and **MIDNIGHT MADNESS DISTILLING, LLC** ("Buyer").

For valuable consideration, the receipt of which is hereby acknowledged, and to induce Seller to enter into the Contract, Guarantor (meaning all undersigned Guarantors, if more than one, jointly and severally) hereby unconditionally guarantees to Seller and its assigns, regardless of the enforceability of the Contract, or any other circumstances which might affect the liability of Guarantor that (i) all Buyer's indebtedness under the Contract ("Debt"), including without limitation each installment thereof, will be paid in full when due, whether at stated maturity or maturity by acceleration or otherwise, in accordance with the terms of the Contract, and (ii) in case of any extension of time of payment or renewal of any of the Debt, it will be paid in full when due in accordance with the terms of such extension or renewal, whether at stated maturity or maturity by acceleration or otherwise. Failing payment when due of any amount so guaranteed for whatever reason, Guarantor will be obligated to pay such amount immediately, regardless of whether Seller has proceeded against Buyer or the Collateral (as defined in the Contract). Guarantor hereby waives notice of and consents to any extensions of the time of payment, renewals, releases of Collateral, or other indulgence from time to time granted to Buyer in respect of any or all of the Debt. Guarantor hereby waives demand of payment, presentation, protest, notice of sale or other disposition or release or other handling of the Collateral, and all other notices and demands whatsoever respecting the Debt or the Collateral. This Guaranty shall bind the Guarantor and the estate of Guarantor. This Guaranty shall be automatically reinstated if for any reason any payment in respect of any undersigned Guarantors, if more than one, and any other party liable in respect of the Debt may be released without affecting the liability of any undersigned Guarantor or Guarantors not released. Seller may assign this guaranty to PACCAR Financial Corp. and, if it does, PACCAR Financial Corp. shall have the same rights and remedies as if originally named here in place of Seller. Guarantor authorizes Seller to request and receive information about Guarantor from credit reporting agencies. Seller may assign this guaranty to PACCAR Financial Corp., and, if it does, PACCAR Financial Corp. shall have the same rights and remedies as if originally named here in place of Seller. Guarantor hereby waives notice of acceptance of this guaranty. Guarantor hereby irrevocably waives and renounces any right or claim Guarantor would otherwise have against Buyer, whether by way of indemnification, subrogation, exoneration, right of reimbursement, contribution or otherwise, as a consequence of Guarantor making any payment under this Guarantee.

Dated this 6th day of December, 2017.

| INDIVIDUAL GUARANTOR | ADDRESS | PHONE |
|---|---|---|
| DocuSigned by: *ANTHONY LORUBBIO* [signature] ──────────── ANTHONY LORUBBIO | 138 N. MAIN ST TRUMBAUERSVILLE, PA 18970 | ▊▊▊▊▊▊ |

CAT. NO. 3654Aa    FSCS 01/2015

Page 1 of 1    PRINTED Dec-12-2017 2:13 PM PT

---

DocuSign Envelope ID: 674C8EA1-54C8-4F08-8C48-DE29ABC6352B

MIDNIGHT MADNESS DISTILLING, LLC

Thank you for completing the signing process. To complete your loan package please scan and attach the items listed below:

1. Operating Agreements
2. Certificate of Insurance

☐   Yes, I want to attach a document(s)

☒   No, I don't want to attach a document(s)

To attach your documents please scan the items and either save to your desktop or in a document file. Simply click on the paperclip and browse in your files for the items that you are attaching.

# Certificate Of Completion

Envelope Id: B74C8EA154C84F0B6C48DE29ABC6352B    Status: Completed
Subject: PACCAR Financial Documents for MIDNIGHT MADNESS DISTILLING, LLC, Ref # 58986-1-1.
SenderNameFromFSCSDealer:
ClickUserNameSenderFromFSCSDealer:
DealerNameFromFSCSDealer:
AreaOfficeName:
AreaOfficeCode:
Source Envelope:
Document Pages: 19    Signatures: 13
Certificate Pages: 2    Initials: 0
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

## Record Tracking

Status: Original
12/12/2017 2:13:43 PM

Holder: PFC Southeast DocuSign
pfc.southeast.docusign@paccar.com

Location: DocuSign

## Signer Events

CASEY PARZYCH
casey@mmdistilling.com
Security Level: Email, Account Authentication
(None)

Signature: CASEY PARZYCH (DocuSigned)
Using IP Address: 98.114.122.114

Timestamp:
Sent: 12/12/2017 2:13:45 PM
Viewed: 12/13/2017 6:38:10 AM
Signed: 12/13/2017 6:40:09 AM

## Electronic Record and Signature Disclosure:
Not Offered via DocuSign

ANTHONY LORUBBIO
anthony@mmdistilling.com
CEO
Security Level: Email, Account Authentication
(None)

Signature: ANTHONY LORUBBIO (DocuSigned)
Using IP Address: 98.114.122.114

Sent: 12/13/2017 6:40:11 AM
Viewed: 12/13/2017 11:36:32 AM
Signed: 12/13/2017 11:39:25 AM

## Electronic Record and Signature Disclosure:
Not Offered via DocuSign

Mark Dunlap
mark.dunlap@fmk.com
Security Level: Email, Account Authentication
(None), Access Code

Signature: Mark Dunlap (DocuSigned)
Using IP Address: 104.129.196.189

Sent: 12/13/2017 11:39:27 AM
Viewed: 12/13/2017 11:47:07 AM
Signed: 12/13/2017 11:48:26 AM

## Electronic Record and Signature Disclosure:
Not Offered via DocuSign

Karen Robinson
Karen.Robinson@paccar.com
Sr. Contract Administrator
PACCAR Finance
Signing Group: Southeast Area Contract Admin
Signing Group
Security Level: Email, Account Authentication
(None)

Signature: Karen Robinson (DocuSigned)
Using IP Address: 160.69.1.253

Sent: 12/13/2017 11:48:28 AM
Viewed: 12/13/2017 11:52:45 AM
Signed: 12/13/2017 11:53:17 AM

## Electronic Record and Signature Disclosure:
Not Offered via DocuSign

| In Person Signer Events | Signature | Timestamp |
|---|---|---|
| Editor Delivery Events | Status | Timestamp |
| Agent Delivery Events | Status | Timestamp |
| Intermediary Delivery Events | Status | Timestamp |
| Certified Delivery Events | Status | Timestamp |
| Carbon Copy Events | Status | Timestamp |
| Notary Events | Signature | Timestamp |

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 12/13/2017 11:48:28 AM |
| Certified Delivered | Security Checked | 12/13/2017 11:52:45 AM |
| Signing Complete | Security Checked | 12/13/2017 11:53:17 AM |
| Completed | Security Checked | 12/13/2017 11:53:17 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

---

DocuSign Envelope ID: 674C8EA1-54C8-4F08-8C48-DE29ABC6352B

# PACCAR FINANCIAL

## MEMBER RESOLUTION AUTHORIZATION TO INCUR INDEBTEDNESS AND PLEDGE ASSETS

EXTRACT FROM:  ☐ MINUTES OF MEETING or ☒ UNANIMOUS WRITTEN CONSENT (check one)

OF THE MEMBERS OF: **MIDNIGHT MADNESS DISTILLING, LLC**

RESOLVED, that the member(s), manager(s), officer(s) and authorized agent(s) of this Limited Liability Company be and each hereby is authorized and directed:

(1) To incur indebtedness in behalf of this Limited Liability Company by leasing from or making other financing or credit arrangements with PACCAR Financial Corp. for such period of time and upon such terms and conditions and at such rates and charges as may to them in their discretion seem advisable, and

(2) To grant a security interest in, mortgage, pledge and otherwise encumber all or any part of the assets of this Limited Liability Company as collateral for such indebtedness, and

(3) To take all such action and to execute in the name and on behalf of this Limited Liability Company, under its seal or otherwise, and deliver all such instruments and documents and to pay all such expenses as in their judgment shall be advisable in order to fully carry out the intent and to accomplish the purposes of the foregoing; and

RESOLVED, that any and all actions heretofore taken by the member(s), manager(s),officer(s) and authorized agent(s) of this Limited Liability Company in connection with any prior loans or financing or credit arrangements with PACCAR Financial Corp. or taken to accomplish the purpose and intent of the foregoing resolution be and hereby are in all respects approved, ratified and confirmed; and

RESOLVED, that the authority conferred upon the member(s), manager(s), officer(s) and authorized agent(s) of this Limited Liability Company by the foregoing resolution shall continue in force and effect until 30 days after written notice of revocation is delivered to PACCAR Financial Corp. at its principal office at 777 - 106th Avenue NE, Bellevue, WA 98004 by registered mail.

I, ANTHONY LORUBBIO, Secretary/Manager of MIDNIGHT MADNESS DISTILLING, LLC do hereby certify that the foregoing is a true and correct copy of resolutions adopted either (a) at a meeting of the members(s) of said Limited Liability Company, which meeting was called after due notice was given or waived, and at which meeting a quorum was present, or (b) by unanimous written consent of the member(s), and that in either case such resolutions remain in full force and effect.

I also certify that CASEY PARZYCH is on this date the member/manager and authorized agent of said Limited Liability Company.

Executed as of December 06, 2017.

DocuSigned by:

*ANTHONY LORUBBIO*
—————————————————
Secretary/Manager

CAT. NO. 1024   FSCS 09/2017    Page 1 of 1    PRINTED Dec-12-2017 2:13 PM PT

---

DocuSign Envelope ID: 674C8EA1-54C8-4F08-8C48-DE29ABC6352B

# PACCAR FINANCIAL

## SELLER'S ASSIGNMENT

FOR VALUE RECEIVED, Seller identified on the face of this Security Agreement – Retail Installment Contract (the "Contract") hereby sells, transfers, and assigns to PACCAR Financial Corp., its successors and assigns (collectively "Assignee") all of Seller's right, title and interest under, in and to the Contract (including Collateral therein described), guaranties of Buyer's obligations, and insurance policies and proceeds thereunder. This Assignment is subject to acceptance by Assignee at its offices, as indicated, and is further subject to the provisions of any underlying agreement between Seller and Assignee respecting acquisition of installment paper (the "Limited Liability Agreement").

In any event, if any of the following representations or warranties is untrue, Seller unconditionally agrees to repurchase from Assignee, upon demand, the Contract, and pay Assignee in cash the balance remaining unpaid thereunder plus any expenses of collection, repossession, transportation and storage, and attorney's fees and court costs incurred by Assignee, less any customary refund by Assignee of unearned finance charges. In addition, Seller agrees to indemnify Assignee for any loss or expense sustained by reason of any claim or defense Buyer may have against Seller.

Seller represents and warrants to Assignee that:

(1) The property or services described in the Contract are accurately described therein, have been delivered to and accepted by Buyer under a bona fide deferred payment transaction as indicated in the Contract, and that all obligations of Seller to Buyer respecting sale and delivery of property or services have been fully performed;

(2) The full amount of any down payment described in the Contract has been received, and that the Time Balance is absolutely owing and payment thereof is not subject to any Buyer defense, counterclaim, setoff or deduction known to Seller;

(3) Seller has no reason to believe that any representation or warranty of the Buyer or any guarantor, whether made in the Contract or in connection with Seller's extension of credit, is incorrect in any material respect, nor has Seller any knowledge of any facts impairing the validity of the Contract or diminishing its value;

(4) Insurance in such amounts and of such coverage as is required by the Contract is effective in respect of property described in the Contract, and that Assignee's lienholder interest is fully protected by such insurance;

(5) The Contract is the entire agreement of Seller and the Buyer thereunder, has been acquired in the regular course of Seller's business, and that it and any guaranty thereof each is valid and genuine in all respects and is legally enforceable against all entities and all persons by whom it purports to have been executed, and that Seller has good and valid title thereto and full right and authority to sell the Contract and the security interest created thereby to Assignee hereunder;

(6) The security interest granted in the Contract constitutes a first priority security interest upon the property described therein; that such security interest and this Assignment thereof to Assignee have been duly perfected as required by applicable law (except insofar as issuance of any Certificate of Title with Assignee's lien notation thereon is presently pending. Seller representing and warranting that due application has been made therefor); and that the Contract and property therein described are free of all other liens or encumbrances;

(7) The Contract has been validly transferred to Assignee, that no part of the indebtedness represented thereby is past due, and that no default exists on the part of the obligor thereunder; and that all legal requirements of any jurisdiction applicable to the transaction from which the Contract originated, and applicable to the Contract and the Assignment, have been satisfied.



Page 1 of Seller's Assignment for Security Agreement dated on or about December 06, 2017 between MIDNIGHT MADNESS DISTILLING, LLC (Buyer) and North Carolina Kenworth, Inc. (Seller) which includes, without limitation, an item of collateral with the following Vehicle Identification Number: 2NKHHM7X2JM214870

CAT. NO. 1033   FSCS 12/2015    PRINTED Dec-12-2017 2:13 PM PT

DocuSign Envelope ID: 6744C8EA1-54C8-4F08-8C48-DE29ABC6352B

# PACCAR FINANCIAL

## SELLER'S ASSIGNMENT

In addition to any liability of Seller under the foregoing Assignment, Seller shall have the following liability to Assignee under the Limited Liability Agreement:

X   Non-Recourse

☐   Limited Liability -- Percentage of Contract Payoff _____ %

☐   Limited Liability, Other

☐   Full Recourse: If Buyer fails to pay any payment on the Contract when due, or if Buyer is otherwise in default under the terms of the Contract, or if Buyer or Seller becomes insolvent or makes assignment for the benefit of creditors, or if a petition for a receiver or in bankruptcy is filed by or against Buyer or Seller, then in any of such events Seller will, without requiring Assignee to proceed against Buyer or any other person or any security, repurchase the Contract on demand and pay Assignee in cash the balance remaining unpaid thereunder plus any expenses of collection, repossession, transportation and storage, and reasonable attorney's fees and court costs incurred by Assignee, less any customary refund by Assignee of unearned finance charges. Seller waives all rights arising under the Limited Liability Agreement relating to any failure on the part of Assignee to obtain possession within 180 days.

ASSIGNMENT: The foregoing contract is hereby assigned under the terms of the "Seller's Assignment" above.

North Carolina Kenworth, Inc.
SELLER

BY: *Mark Dunlap* (DocuSigned by: 91C139833A874A7)

Mark Dunlap, Branch Manager - Greensboro

ACCEPTANCE: The foregoing assignment is hereby accepted.

PACCAR Financial Corp.
2180 Satellite Boulevard, Suite 200
Duluth, GA 30097

BY: *Earnie Robinson* (DocuSigned by: 3146B70AFFA64F6)

Sr. Contract Administrator

DATE: 12/13/17

Page 2 of Seller's Assignment for Security Agreement dated on or about December 06, 2017 between MIDNIGHT MADNESS DISTILLING, LLC (Buyer) and North Carolina Kenworth, Inc. (Seller) which includes, without limitation, an item of collateral with the following Vehicle Identification Number 2NKHHJ7X2JM214870.

CAT. NO. 1033   FSCS 12/2015

PRINTED Dec-12-2017 2:13 PM PT