**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | * | **Chapter 11** |
| **MIDNIGHT MADNESS DISTILLING LLC,** | * | **Case No. 21-11750-MDC** |
| | * | |
| Debtor. | | |
| | * | |

* * * * * * * * * * * * *

**ORDER: (1) APPROVING ASSET PURCHASE AGREEMENT AMONG THE DEBTOR AND THE BUYER, (2) APPROVING SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(b), (f) AND (m), (3) APPROVING ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365, (4) DETERMINING THE AMOUNTS NECESSARY TO CURE SUCH EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND GRANTING RELATED RELIEF**

Upon the motion (the "Sale Motion") of Midnight Madness Distilling, LLC (the "Debtor"), debtor and debtor in possession in the above-captioned case ("Bankruptcy Case") pursuant to sections 105, 363 and 365 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), whereby the Debtor sought entry of an order (i) authorizing and approving the sale of the Debtor's assets (the "Sale") free and clear of all liens, claims, encumbrances and interests of any kind to the successful bidder, as determined in accordance with the terms of the Sale Procedures Order (as defined herein); (ii) authorizing the assumption and assignment of certain executory contracts and unexpired leases (the "Assigned Contracts") of the Debtor that may be assumed and assigned in connection with the Sale, subject to and at the time of the closing of the Sale; and (iii) granting related relief; and the Court having entered the Sale Procedures Order ("Bidding Procedures Orders"), dated August 12, 2021, which, inter alia,

(a) approved the Bidding Procedures, (b) approved the form and manner of notice of the Auction, if any, and the Sale Hearing, and (c) established a Stalking Horse Bidder; and the Court having established the date of the Sale Hearing; and upon consideration of the Sale Motion, the relief requested therein and responses thereto; and the Court having reviewed and considered: (a) the Sale Motion; (b) the objections to the Sale Motion, if any; and (c) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation and sufficient cause appearing:

**IT HEREBY IS FOUND AND DETERMINED THAT:**

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C. This Court has jurisdiction over the Sale Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) & (O). Venue of this case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D. The statutory basis for the relief sought in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 6006.

E. As evidenced by the certificates of service on file with the Court, (i) due, proper, timely, adequate, and sufficient notice, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Sale Procedures Order; (ii) such notice was

good, sufficient, and appropriate under the circumstances; and (iii) no other or further notice of the Sale Motion is or shall be required.

F.      As demonstrated by (i) evidence adduced at and prior to the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, pursuant to the Auction conducted on August 25, 2021 and subsequent negotiations, the Debtor has determined that the Asset Purchase Agreement filed on September 15, 2021 [Docket No. __] (the "Asset Purchase Agreement"), by and between Debtor and Millstone Spirits Group, LLC (the "Buyer"), attached hereto as **Exhibit A**, represents the highest and best offer for the purchased assets (as defined in the Asset Purchase Agreement, the "Purchased Assets") and that no further marketing or sales process with respect to the Purchased Assets is in the best interests of the Debtor's estate or creditors or is likely to lead to an offer that provides consideration in excess of the consideration provided in the Asset Purchase Agreement. The Sale Procedures were non-collusive, duly noticed, substantively and procedurally fair to all parties, and were the result of arm's length negotiations. The Sale Procedures Order has been complied with in all material respects.

G.      Upon entry of this Sale Order, the Debtor shall have full authority to consummate the Asset Purchase Agreement and the Sale Transaction.

H.      Approval of the Asset Purchase Agreement and consummation of the Sale Transaction is in the best interests of the Debtor, its estate, creditors, and other parties in interest. The Debtor has demonstrated good, sufficient, and sound business purposes and justifications for the sale to the Buyer pursuant to section 363(b) of the Bankruptcy Code.

I.      The Asset Purchase Agreement was negotiated, proposed, and entered into by the Debtor and the Buyer without collusion, in good faith, and from arm's length bargaining

positions. The Buyer is not an "insider" of the Debtor, as that term is defined in section 101 of the Bankruptcy Code.

J.      The sale price in respect of the Purchased Assets was not controlled by any agreement among potential acquirers of the Purchased Assets and neither the Debtor nor the Buyer engaged in collusion or any other conduct that would cause or permit the Asset Purchase Agreement or Sale Transaction to be avoided under section 363(n) of the Bankruptcy Code. Accordingly, neither the Asset Purchase Agreement nor the Sale Transaction may be avoided and no party shall be entitled to any damages or other recovery pursuant to section 363(n).

K.      The Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Buyer is acting in good faith within the meaning of section 363(m) in consummating the Sale Transaction.

L.      The consideration to be provided by the Buyer pursuant to the Asset Purchase Agreement: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Purchased Assets; (iii) will provide a greater recovery for the Debtor's creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration.

M.      The transfer of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets and will vest the Buyer with all right, title, and interest of the Debtor to the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever, other than liens specifically assumed by Buyer under the Asset Purchase Agreement, provided, that all liens, claims, encumbrances and interests of which the Purchased Assets are sold free and clear shall attach to the proceeds of the sale, in order of priority. The Debtor may sell the Purchased Assets free and clear of all such liens,

claims, encumbrances and interests because, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied.

N.   The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtor under applicable law, and none of the parties to the Asset Purchase Agreement are consummating the Sale with any fraudulent or otherwise improper purpose.  The purchase price for the Purchased Assets constitutes (i) reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory, or possession or the District of Columbia.

O.   Except as otherwise provided herein or in the Asset Purchase Agreement, the transfer of the Purchased Assets to the Buyer or its designee(s), including the assumption by the Debtor and assignment and sale to the Buyer or its designee(s) of the Assigned Contracts, will not subject the Buyer or its designee(s) to any liability whatsoever (including any successor liability) with respect to the operation of the Business prior to the Closing or by reason of such transfer, except that the Buyer or its designee(s), as applicable, shall remain liable for the Assumed Liabilities.

P.   The Asset Purchase Agreement is a valid and binding contract between the Debtor and the Buyer, which is and shall be enforceable according to its respective terms.

Q.   To the greatest extent allowed by applicable law, the transactions contemplated under the Asset Purchase Agreement do not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtor and/or the Debtor's estate, there is no substantial continuity

between the Buyer and the Debtor, there is no common identity between the Debtor and the Buyer, there is no continuity of enterprise between the Debtor and the Buyer, the Buyer is not a mere continuation of the Debtor or its estate, and the Buyer does not constitute a successor to the Debtor or its estate.  Except to the extent, if any, that the Buyer has assumed liabilities of the Debtor under the Asset Purchase Agreement or otherwise agreed to certain carve outs or other payments from Available Cash (as defined in the Asset Purchase Agreement, the "Assumed Liabilities"), the Buyer shall have no obligations with respect to any liabilities of the Debtor.

R. Notice of the Debtor's assumption, and assignment and sale to the Buyer of the Assigned Contracts has been provided to each non-debtor party thereto, together with a statement therein from the Debtor with respect to the amount, if any, to be paid to such non-debtor party under Bankruptcy Code section 365(b) as a condition to assumption and assignment.  As to each Purchased Contract, payment of the amounts set forth on **Exhibit B** hereto (each a "Cure Amount" and collectively, the "Cure Amounts") is sufficient for the Debtor to comply fully with the requirements of section 365(b)(1)(A) and (B) of the Bankruptcy Code.  In addition, the Buyer has provided adequate assurance of its ability to perform its obligations under each of the Assigned Contracts within the meaning of section 365(f)(2)(B) of the Bankruptcy Code.  Therefore, the Assigned Contracts may be assumed by the Debtor and assigned and sold to the Buyer.

S. There is other good and sufficient cause to grant relief requested in the Sale Motion and approve the Asset Purchase Agreement and the Sale Transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Sale Motion is GRANTED.

2. Any objections to the Sale Motion or the entry of this Sale Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are DENIED and OVERRULED.

3. The Asset Purchase Agreement, including all of its terms and conditions, and the Sale Transaction are hereby approved.

4. Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtor is authorized to (i) execute, deliver, and perform under, consummate, and implement the Asset Purchase Agreement together with all additional instruments and documents that are requested by the Buyer and may be reasonably necessary or desirable to implement the Asset Purchase Agreement, and (ii) take any and all actions as they deem necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to Buyer's possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement, including, without limitation, any and all actions reasonably requested by the Buyer to effectuate the Asset Purchase Agreement.

5. Pursuant to sections 105(a), 363(f) and 365(b) of the Bankruptcy Code, upon the Closing: (i) the transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement shall constitute a legal, valid, and effective transfer of the Purchased Assets and shall vest the Buyer with all right, title, and interest in and to the Purchased Assets; (ii) the Purchased Assets shall be transferred to the Buyer free and clear of all liens, encumbrances, and other interests of any kind and every kind whatsoever, other than federal excise tax liens which may attach to Inventory pursuant to 26 U.S.C. §5001 et seq., and liens specifically assumed by Buyer under the Asset Purchase Agreement, in accordance with section 363(f) of the Bankruptcy Code,

116939\000001\4810-6939-7496.v4

with any such liens, claims, encumbrances and interests of which the Purchased Assets are sold free and clear to attach to the proceeds of the Sale Transaction, in the order of their priority, with the same validity, force, and effect which they had against the Purchased Assets prior to the entry of this Sale Order, subject to any rights, claims, and defenses the Debtor and all interested parties may possess with respect thereto; and (iii) each of the Contracts designated as Assigned Contracts at Closing shall be deemed assumed by the Debtor and assigned and sold to the Buyer.

6. This Sale Order is and shall be effective as a determination that all liens, claims, encumbrances and interests, other than liens specifically assumed by Buyer under the Asset Purchase Agreement, shall be and are, without further action by any Person, released with respect to the Purchased Assets as of the Closing Date.

7. Except to the extent expressly included in the Assumed Liabilities, as defined in the Asset Purchase Agreement, or other liabilities provided for in the Asset Purchase Agreement or to enforce the Asset Purchase Agreement or the terms of this Order, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, without limitation, the Debtor, all debt security holders, all equity security holders, the Debtor's employees or former employees, governmental, tax, and regulatory or investigatory authorities of any sort, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding any liens, claims, encumbrances, and other interests of any kind and every kind whatsoever against, in or with respect to any of the Debtor, the Debtor's business, or all or any part of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtor, all or any part of the Purchased Assets, the operation of the Debtor's business prior to the Closing Date, or the transfer of the Purchased Assets to the

Buyer shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such liens, claims, encumbrances, or other interests, whether by payment, setoff, or otherwise, directly or indirectly, against the Buyer or any affiliate, successor, or assign thereof, or against the Purchased Assets. The Buyer shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 *et seq.*) ("WARN") or the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), or any foreign, federal, state or local labor, employment or environmental law whether of similar import or otherwise by virtue of the Buyer's purchase of the Purchased Assets or assumption of the Assumed Liabilities by the Buyer.

8. Except with regard to the Assumed Liabilities or as otherwise set forth herein or in the Asset Purchase Agreement, the Buyer shall not be deemed or considered a successor to the Debtor or the Debtor's estate by reason of any theory of law or equity and the Buyer has not assumed nor is it in any way responsible for any liability or obligation of the Debtor or the Debtor's estate, including, without limitation, on account of or of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), WARN (defined below), CERCLA (defined below), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* (the "NLRA"), environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including without limitation, under CERCLA, any liabilities, debts or obligations of or required to be paid by the

Debtor for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine.

9. Nothing in this Order or the Asset Purchase Agreement shall require the Buyer to (a) continue or maintain in effect, or assume any liability in respect of any employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtor is a party or have any responsibility therefor including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

10. At the closing of the Sale Transaction, to the extent provided by the Asset Purchase Agreement (and not identified as an Excluded Asset), all of the rights, claims or causes of action of the Debtor or its bankruptcy estate against the Buyer, its affiliates or any holder of an Assumed Liability, including any Claims and causes of action arising under Chapter 5 of the Bankruptcy Code or any similar Law against such older of an Assumed Liability, shall be assigned, sold and transferred to Buyer, free and clear of all liens, claims, encumbrances and interests, and Buyer shall have standing and authority to assert such rights, claims and causes of action.

11. Pursuant to section 365 of the Bankruptcy Code, the Debtor is authorized to assume the Assigned Contracts and assign and sell the Assigned Contracts to the Buyer. In the

- 10 -

event that the Buyer elects to acquire any Assigned Contracts the Buyer shall pay the Cure Amounts set forth on **Exhibit B** hereto, no later than five (5) Business Days following the Closing of the Sale Transaction; provided, however, that the Buyer may direct the removal or addition of any such contract or lease from the list of Assigned Contracts set forth in Schedule 1.01 of the Asset Purchase Agreement, in which case of removal such contract or lease shall not constitute a Purchased Contract and neither the Debtor nor the Buyer shall have any obligation to pay any Cure Amount with respect thereto.  Buyer may direct the removal or addition of any Contract from the list of Assigned Contracts set forth in Schedule 1.01 of the Asset Purchase Agreement in Buyer's sole and absolute discretion (i) until two (2) Business Days prior to the Closing Date, and (ii) after the Closing Date, if the Cure Amount for such Contract is subject to dispute as of the Closing and is determined by the Bankruptcy Court after the Closing to be greater than the amount set forth in the Notice of Cure Costs (Dkt. No. 114).

12. The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  Pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assigned Contracts after such assignment and sale to the Buyer.

13. Subject to all of the applicable terms and conditions set forth in the Asset Purchase Agreement, the Debtor shall not reject any Contract designated an Assigned Contract under the Asset Purchase Agreement, provided however, that the Debtor's Equipment Lease

Agreements with Agtech IV, LLC and ETOH Worldwide, LLC shall be deemed rejected as of the date of this Order.

14. All defaults or other obligations of the Debtor under each Assigned Contract arising or accruing prior to the closing of the Sale (the "Closing") (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured and any pecuniary loss arising therefrom deemed compensated, upon payment of the Cure Amount with respect thereto, if any, and the Buyer shall have no liability or obligation arising or accruing in respect of the Assigned Contracts on or prior to the Closing. The non-debtor parties to the Assigned Contracts are barred from asserting against the Debtor, the Buyer, and their respective successors and assigns, any default or unpaid obligation allegedly arising or accruing before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Assigned Contracts arising or incurred prior to the Closing, other than the Cure Amounts.

15. The payment of the cash required to be paid at Closing, the assumption of the Assumed Liabilities and all other consideration provided by the Buyer for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable.

16. At Closing, any deductions from the sale proceeds to be paid by Seller under the Asset Purchase Agreement that exceed the total amount of twenty-five thousand dollars ($25,000) shall be subject to the prior written approval of Seller and Bancshares Realty, LLC, as successor by assignment to PNC Bank, N.A. and PNC Equipment Finance, LLC (collectively, "PNC"). A copy of the proposed HUD-1 settlement statement for Closing (and any amendments thereto) shall be prepared by Buyer and provided to PNC and Seller prior to Closing for review.

116939\000001\4810-6939-7496.v4

17. The Debtor is authorized and directed to distribute the net sale proceeds from the Sale Transaction to the holder of any liens, claims, encumbrances of which the Assets are sold free and clear, in their order of priority, contemporaneously with the Closing, provided, however, that if the Available Cash is not sufficient to trigger Millstone's obligation to fund the Carve Out (as defined in the Asset Purchase Agreement), then the Carve Out shall be payable from the net proceeds from the Sale Transaction. For administration purposes, the Carve Out shall be pre-funded by PNC from the net proceeds of the sale, such that $50,000 shall be retained in the Debtor's DIP account at Closing. If, after reconciliation of the Available Cash, it is determined that Millstone is obligated under the Asset Purchase Agreement to fund the Carve Out, then Millstone shall promptly reimburse PNC for the full amount of the Carve Out.

18. In addition to an administrative freeze on the DIP Account for the amount of the Cash Holdback (as defined in the Asset Purchase Agreement), to the extent the net sale proceeds are not distributed by the Debtor at Closing, PNC is hereby authorized to place an administrative hold on the DIP account for the amount of the net proceeds and the Carve Out until such funds can be distributed as provided herein and/or transferred to the account of any trustee that is subsequently appointed.

19. Effective upon Closing, the Cash Holdback shall be deemed property of the Buyer, subject to the conditions contained in the Asset Purchase Agreement, and shall no longer constitute property of the Debtor's bankruptcy estate. The Cash Holdback shall be available for the payment of the Unpaid Administrative Claims, and any dispute related to the payment or allowance of the Unpaid Administrative Claims shall be subject to the exclusive jurisdiction of this Court.

20. The Debtor is prohibited from using any funds in the DIP Account after the Closing Date for any purpose other than in accordance with the Asset Purchase Agreement and this Order and any Cash Collateral Order.

21. The Asset Purchase Agreement and the Sale Transaction shall not be avoided under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) in respect of the Asset Purchase Agreement or the Sale Transaction.

22. The Asset Purchase Agreement and the Sale Transaction are undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Asset Purchase Agreement and the Sale Transaction shall not affect the validity of the sale of the Purchased Assets to the Buyer or any other aspect of the Sale Transaction, unless this Sale Order is duly stayed pending such appeal. The Buyer is a good faith purchaser of the Purchased Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

23. All persons and entities that are in possession of some or all of the Purchased Assets as of the Closing are hereby ordered to surrender possession of such Purchased Assets to the Buyer as of the Closing.

24. This Sale Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Purchased Assets free and clear of all liens, claims, encumbrances and interests, other than liens specifically assumed by Buyer under the Asset Purchase Agreement (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized and specifically directed to strike recorded claims, liens and interests against the Purchased Assets recorded prior to the date of this Sale Order, other than liens specifically assumed by Buyer under the Asset Purchase Agreement.

25. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Asset Purchase Agreement, and the Sale Transaction.

26. The terms and provisions of the Asset Purchase Agreement, the other ancillary agreements, and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, the Buyer, and their respective affiliates, successors and assigns, and any affected third parties, notwithstanding the dismissal of any of the Debtor's case or any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code or conversion of the Debtor's case to a case under chapter 7, as to which trustee(s) such terms and provisions likewise shall be binding and not subject to rejection or avoidance. The Asset Purchase Agreement, the Sale Transaction and this Sale Order shall be binding upon, and shall not be subject to rejection or avoidance by, any chapter 7 or chapter 11 trustee appointed in the Bankruptcy Case. Further, nothing contained in any plan of reorganization (or liquidation) confirmed in this chapter 11 case or any order confirming any plan of reorganization (or liquidation) or any other order entered in this case shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.

116939\000001\4810-6939-7496.v4

27. The Asset Purchase Agreement and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that any such amendment does not have a material adverse effect on the Debtor or the Debtor's estate.

28. The failure to include specifically any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

29. To the extent of any inconsistency between the provisions of this Sale Order, the Asset Purchase Agreement, and any documents executed in connection therewith, the provisions contained in the Sale Order, the Asset Purchase Agreement, and any documents executed in connection therewith shall govern, in that order.

30. To the extent the Schedules to the Asset Purchase Agreement are updated in accordance therewith (with the approval of the Buyer), the Debtor shall file updated Schedules to the Asset Purchase Agreement (as such Schedules may be approved by the Buyer) as soon as practicable, but in no event later than five (5) Business Days following the Closing Date.

31. The provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of all liens, claims, encumbrances and interests, other than liens specifically assumed by Buyer under the Asset Purchase Agreement, shall be self-executing, and notwithstanding the failure of the Debtor, the Buyer, or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof, all liens, claims, encumbrances, and other interests on or against such Purchased Assets (other than liens specifically assumed by Buyer

under the Asset Purchase Agreement), if any, shall be deemed released, discharged and terminated.

33. Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062, this Sale Order shall be effective and enforceable immediately and shall not be stayed.

33. The requirements set forth in Local Rules 6004-1, 9006-1 and 9013-1 are hereby satisfied or waived.

34. This Court shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or related to this Sale Order, the Asset Purchase Agreement or any other related agreements, including without limitation: (a) any actual or alleged breach or violation of this Sale Order, the Asset Purchase Agreement or any related agreements and (b) the enforcement of any relief granted in this Sale Order or (c) as otherwise set forth in the Asset Purchase Agreement.

BY THE COURT:

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

**END OF ORDER**

116939\000001\4810-6939-7496.v4