IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | * | |
| MIDNIGHT MADNESS DISTILLING, LLC, | * | Case No. 21-11750-MDC |
| | | Chapter 11 |
| Debtor. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**LIMITED OBJECTION OF MILLSTONE SPIRITS GROUP, LLC TO
MOTION OF ETOH WORLDWIDE, LLC FOR ALLOWANCE OF EXPENSE
REIMBURSEMENT AND TO COMPEL PAYMENT**

Millstone Spirits Group, LLC ("Millstone"), by and through its undersigned counsel, hereby files this limited objection to the Motion of ETOH Worldwide, LLC ("ETOH") for Allowance of Expense Reimbursement and to Compel Payment (the "Motion"). In support of its objection, Millstone respectfully states as follows:

### I.    BACKGROUND

1. Contemporaneously with the filing of the present bankruptcy case, Midnight Madness Distilling, LLC (the "Debtor") filed an *Expedited Motion for Entry of an Order: (I) Approving the Sale of Sale of up to Substantially All of the Debtor's Assets, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, and (III) Scheduling Hearings for Such Relief and (IV) Granting Related Relief* (Dkt. No. 4; "Sale Motion"). The Sale Motion sought approval of a sales process whereby ETOH would be a stalking horse bidder for substantially all assets of the Debtor.

2. The Sale Motion explained that the Debtor had "entered into various ventures with the Buyer Affiliates to help keep the business afloat…" Sale Motion ¶ 8. The Sale Motion further claims that ETOH and its affiliates (defined in the Sale Motion, and for purposes hereof

1

as the "Buyer Affiliates") had begun making substantial investments in the Debtor's business in February 2021, including leasing the canning machinery to the Debtor and "substantial other investments with the Debtor and related businesses with the hopes of entering into a longer-term, acceptable and stable solution with the Debtor as well." See Sale Motion ¶ 9.

3.  Based upon the false premise of urgency, the Debtor requested in the Sale Motion that the entire bid and auction process occur over a thirty-day period, with a bid deadline of only two weeks after approval of the sale procedures.

4.  A data room with information relevant for potential bidders to assess the sale was not made available until July 9, 2021, a merely 19 days before the proposed bid deadline.

5.  The Sale Motion attached the proposed asset purchase agreement as an Exhibit, but failed entirely to disclose to the Court the proposed expense reimbursement to ETOH of up to $100,000. As PNC noted in its objection to the Sale Motion, the requested expense reimbursement was problematic given that a pre-petition sale to the Buyer Affiliates fell through well before the bankruptcy was filed, and thus it was critical to determine that the expense reimbursement was limited to the bankruptcy sale, and not to the failed transaction.

6.  Ultimately, the sale procedures were amended to permit more time for potential bidders to undertake due diligence and submit their bids, and at the August 25, 2021 auction, Millstone submitted the highest and best offer. Millstone and the Debtor closed on the sale on September 30, 2021.

7.  ETOH now seeks reimbursement for fees and expenses in the amount of $95,857.50, that date back to April 8, 2021, and that, as explained below, are not entitled to approval under the applicable standard set forth by the United States Court of Appeals for the Third Circuit in O'Brien Environmental Energy, Inc., 181 F.3d 527 (3d. Cir. 1999).

## II. ARGUMENT

### A. Heightened Scrutiny for Insider Transactions.

8. As an initial matter, the consideration of a request for a breakup fee in an insider transaction should be subjected to a heightened level of scrutiny. See In re Philadelphia Newspapers, LLC, 2009 WL 3242292 at * 12 (Bankr. E.D. Pa. 2009); In re Papercraft Corp., 211 B.R. 813, 823 (W.D. Pa. 1997) ("Insider transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoints of the corporation and those with interests therein").

9. As set forth in the Declaration of Casey Parzych in Support of First Day Motions and Applications (Dkt. No. 15; "Casey Dec.'")), Casey Parzych ("Casey") is the manager and sole officer of the Debtor. See Casey Dec. ¶ 1. As also set forth in the Casey Dec., ETOH and AgTech VI, LLC ("AgTech") are wholly owned subsidiaries of XO Energy Worldwide, LLP ("XO"). Id. at ¶ 22. The President of XO, parent to both ETOH and AgTech, is Shawn Sheehan ("Sheehan").

10. Based on publically available information, Sheehan and Casey are co-founders of a company known as Wynk ("Wynk"). *See* "About Wynk", accessed at https://drinkwynk.com/pages/about, on October 21, 2021; attached as **Exhibit A;** Bevnet.com, "THC Seltzer Brand Wynk Enters the Functional Beverage Category with Inventive Production Model", August 16, 2021, accessed at https://www.bevnet.com/news/2021/thc-seltzer-brand-wynk-enters-the-functional-beverage-category-with-inventive-production-model/, on October 21, 2021, attached as **Exhibit B**.

11. The third founder of Wynk appears to be Angus Rittenburg who is also apparently a "minority unity holder, as well as an officer and manager of the Debtor". *See* Supplemental Declaration of Casey Parzych in Support of Sale and Bid Procedure Motions ("Casey Supp. Dec."; Dkt. No. 98) ¶ 5.[1]

12. According to Casey Parzych's and Shawn Sheehan's LinkedIn profiles, they co-founded Wynk in October 2020, close to a year before this case was filed. See LinkedIn profiles, accessed at https://www.linkedin.com/in/casey-parzych-48726347/ and at https://www.linkedin.com/in/shawn-sheehan-5a228031/ on October 21, 2021, attached as **Exhibit C**.

13. Although 11 U.S.C. § 101(31) outlines a list of statutory insiders, it is well established that that list is non-exhaustive and that non-statutory insiders, who do not fit within the definition of 101(31) may exist. For a person to be a non-statutory insider, "there must be a close relationship with the debtor and some evidence, other than the relationship, that the transaction was not conducted at arm's length." *Burtch v. Opus, LLC (In re Opus East, LLC)*, 528 B.R. 30, 93 (Bankr. D. Del. 2015) (citing *Winstar,* 554 F.3d at 396-97). The Sale Motion and the Casey Declaration alone are more than sufficient to show that ETOH was an insider of the Debtor. For example:

> a. "The Debtor has entered into various ventures with the Buyer Affiliates to help keep the business afloat…" Sale Motion at ¶ 8.
>
> b. "As a result, the Buyer Affiliates have made a substantial investment into the Debtor's business." Sale Motion at ¶ 9.
>
> c. "In all, at this time, the Buyer Affiliates have committed substantial other investments with the Debtor and related businesses with the hopes of entering into a longer-term acceptable and stable solution with the Debtor as well." Id.

---

[1] It is unclear how Rittenburg can be an officer of the Debtor is Casey is the sole officer.

4

    d. "To date, the Buyer Affiliates efforts have been thwarted because of an inability to reach a resolution outside of bankruptcy with the Debtor's secured lender and a minority equity holder." Id.

    e. "Two key factors led to the Debtor's bankruptcy filing: (a) a default of MMD's obligations to PNC … and (b) the inability of MMD to consummate the sale of its business." See Casey Dec. ¶ 17.

    f. "…prior to the filing, MMD was in negotiations with XO Energy Worldwide, LLP and its affiliates of which it is the sole member of (AgTech VI, LLC and EtOH Worldwide, LLC) and its affiliated companies (Collectively, "XO") to purchase the Debtor's business as a going concern. The proposed sale was not consummated for a number of reasons, including the inability for the Debtor to obtain the consent of minority member Lorubbio." Id. ¶ 23.

    g. "In light of the pending PNC default, XI has given an ultimatum to MMD, requiring it to either sell its assets in a Chapter 11 Section 363 sale, or face withdrawal of XO's support." Id. ¶ 29.

14. In addition, the detailed time entries attached as Exhibit A to the Motion, demonstrate that ETOH was in negotiations to either purchase PNC's debt or purchase the Debtor's business assets outside of bankruptcy, and played an instrumental role in forming the Debtor's bankruptcy strategy. As a single example, incredibly, on July 28 and 29, 2021, ETOH's counsel revised the declaration that Casey Parzych submitted to this Court to address potential conflicts of interest. See Motion, Exh. E, p. 19.

15. By way of final example, on September 10, 2021, Millstone was contacted by Scott Laboratories, with concerns regarding Millstone's intentions for an $82,719 velcorin dosing machine[2] ordered and purchased by the Debtor, and shipped to the Debtor at 2512 Quakertown Road, Pennsburg, PA 18703- a location that has never been disclosed by the Debtor as part of its operations. A true and correct copy of Scott Laboratories Invoices SIV326554 is attached hereto as

---

[2] Upon information and belief, velcorin is a microbial control agent often used in the bottling of wine, cider and non-alcoholic beverages, neither of which is produced, canned or bottled by the Debtor.

**Exhibit D.** Upon further inquiry, Scott Laboratories and the Debtor's CFO, Kelly Festa, both confirmed that ETOH paid Scott Laboratories for the dosing machine and that it was not owned by the Debtor.

16. Simply put, ETOH has been and continues to be inextricably intertwined with Casey Parzych and his various business ventures, and as such the Motion should be viewed with the appropriate heightened scrutiny.

### B. O'Brien Standard.

17. In determining the permissibility of a break-up fee, the Third Circuit has held that the party requesting the break-up fee must "show that the fees were actually necessary to preserve the value of the estate." *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir. 1999). The Third Circuit held in O'Brien that such value to the estate could be found to exist if: (i) the guarantee of a break-up fee led to more competitive bidding; (ii) the bid of the bidder receiving the break-up fee served as a "catalyst" to higher bids; and (iii) the promise of a break-up fee and other expenses enticed a bidder to conduct diligence on the debtor's value and then proceeded to convert that value to a dollar amount on which other bidders could rely. *Id.* at 537. Subsequent decisions in the Third Circuit have adopted and relied upon the test articulated in *O'Brien* when considering the propriety of requested break-up fees and expense reimbursements. *See In re Beth Israel [Hosp. Assoc.] of Passaic*, No. 06-16186, 2007 WL 2049881, *12 (Bankr. D.N.J. July, 12 2007) ("Using the guidance provided by *O'Brien*, it is manifest that BIRAC's request for payment of a break-up fee cannot be granted."); *In re Reliant Energy Channelview, LP*, 403 B.R. 308, 311 (D. Del. 2009) ("Applying *O'Brien* to the circumstances of this case, the Court cannot conclude that the Bankruptcy Court abused its discretion in declining to award Kelson the Break-Up Fee.").

6

Applying the *O'Brien* test to the facts at hand, the Break-up Fee requested by ETOH did not provide the Debtors' estate with value.

18. With respect to the first factor, the guarantee of a breakup fee did not induce ETOH to bid on the assets, and thus did not lead to more competitive bidding. The record in this case, and the time entries submitted with the Motion establish that ETOH had been attempting for many months prior to the Bankruptcy to retain control of the Debtor and its assets through a variety of means, including extensive discussions with PNC in early 2021. ETOH needed no financial inducement to submit its Stalking Horse bid, as they had already invested substantial time and money evaluating the business before a bankruptcy was ever contemplated.

19. Second, the Stalking Horse bid did not serve as a catalyst for additional bids. The mere fact that the Stalking Horse bidder was an insider of the Debtor with intimate and preexisting knowledge of the assets to be sold, and that Finland Leasing (the Debtor's landlord for 2300 Trumbauersville Road and Casey Parzych's father) made clear he would only lease to ETOH, certainly dissuaded true third party purchasers. Millstone was the only bidder at the auction other than ETOH and PNC, and even then, the Debtor attempted to prevent Millstone from bidding by announcing, *at the auction with not advance warning,* that the Debtor would not consider the bids apples-to apples unless Millstone agreed to pay ETOH's administrative expense claim. If ETOH's insider status wasn't not enough to chill bidding, the Debtor's overwhelming support of the Stalking Horse surely did. The mere showing that Millstone's bid was higher than the ETOH is not sufficient to prove that ETOH was a catalyst for higher bids.

20. Finally, the promise of a break-up fee and other expenses did not entice ETOH to conduct diligence on the Debtor's value and then proceeded to convert that value to a dollar amount on which other bidders could rely. ETOH had unfettered access to information

7

regarding the valuation of the Debtor's assets and its business operations for months, if not longer, before the bankruptcy was filed. There is simply no basis to compensate ETOH for performing diligence on the Debtor's assets when ETOH had preexisting knowledge as to the Debtor's business operations and assets.

### C. Millstone Has No Payment Obligations Absent Approval of the Break-Up Fee by the Court Pursuant to 11 U.S.C. § 503.

21.     ETOH appears to argue in its Motion that Millstone is obligated to pay its break-up fee, carte blanche, because Millstone assumed the payment obligation.  To be clear, Millstone does not dispute that to the extent this Court allows the break-up fee as an appropriate administrative claim under Section 503, Millstone is obligated to, and will make such payment to ETOH.  However, as set forth in the Court's Order Approving Bidding Procedures ¶ 24 [Doc. No. 110] ETOH is not entitled to be paid its break-up fee unless and until such amount is approved by this Court.

### D. Even If ETOH is Entitled to the Break Up Fee, It Must be Limited to Time Related to the Bankruptcy Sale.

22.     In the event this Court determines that ETOH has satisfied the *O'Brien* requirements and is entitled to payment of its fees and expenses as an administrative claim, the Court should reduce the claim by each time entry that was not directly related to this sale transaction.  Notably, almost none of the time sought to be reimbursed relates to due diligence, presumably because ETOH had complete visibility into the Debtor's business and had completed any diligence it needed months earlier when it was trying to purchase the assets outside of Bankruptcy. It is unclear why ETOH believes it should be reimbursed for time its counsel spent,

8

for example, negotiating ETOH's pre-petition leases of equipment to the Debtor, negotiating to buy PNC's debt, helping the Debtor to formulate its bankruptcy strategy; attending the Debtor's 341 motion; reviewing pleadings in the case or evaluating objections to various pleadings. None of those categories provided value to the Debtor that warrants allowance of an administrative claim.

23. Without waiving its objection to the allowance of the break-up fee in its entirety, Millstone suggests that the following time entries are the only ones for which ETOH could even conceivably be entitled to an administrative claim:

| Date | Name | Hours | Amount | Description |
|---|---|---|---|---|
| 5/20/2021 | David M. Scolnic | 0.3 | $165.00 | E-mails re: APA. |
| 5/21/2021 | Matthew A. Hamermesh | 1.5 | $675.00 | Work on bankruptcy provisions of proposed Asset Purchase Agreement. |
| 5/23/2021 | David M. Scolnic | 1.1 | $605.00 | Started drafting Asset Purchase Agreement. |
| 5/24/2021 | David M. Scolnic | 2.5 | $1,375.00 | Continued drafting Asset Purchase Agreement. |
| 5/24/2021 | David M. Scolnic | 1.1 | $605.00 | Continued drafting Asset Purchase Agreement. |
| 5/24/2021 | David M. Scolnic | 2.1 | $1,155.00 | Drafted Asset Purchase Agreement. |
| 5/24/2021 | Matthew A. Hamermesh | 1.3 | $585.00 | Conference calls with C. Drangula and D. Scolnic regarding drafting issue with Asset Purchase Agreement; review updated Asset Report for Midnight Madness Distilling. |
| 5/25/2021 | David M. Scolnic | 1.5 | $825.00 | Telephone calls with client and M. Hamermesh; continued drafting Asset Purchase Agreement. |
| 5/25/2021 | David M. Scolnic | 2.3 | $1,265.00 | Continued drafting Asset Purchase Agreement. |
| 5/25/2021 | Matthew A. Hamermesh | 2.3 | $1,035.00 | Review and revise draft of Asset Purchase Agreement. |
| 5/25/2021 | Michele Fenkel | 1.1 | $440.00 | Reviewed and commented on draft of Asset Purchase Agreement; email to D. Scolnic and M. Hamermesh re same. |
| 5/26/2021 | David M. Scolnic | 1.6 | $880.00 | Revised Asset Purchase Agreement and sent to client. |

9

| Date | Timekeeper | Hours | Amount | Description |
|---|---|---|---|---|
| 5/26/2021 | **David M. Scolnic** | 0.6 | $330.00 | Revised Asset Purchase Agreement. |
| 5/26/2021 | **Elizabeth F. Bethel** | 0.8 | $148.00 | Review Asset Purchase Agreement; prepare List of Schedules and slip pages to Agreement and forward to D. Scolnic. |
| 5/26/2021 | **Matthew A. Hamermesh** | 0.3 | $135.00 | Review and revise new draft of Asset Purchase Agreement. |
| 5/27/2021 | **Matthew A. Hamermesh** | 1.4 | $630.00 | Continued work on Asset Purchase Agreement and related bankruptcy issues. |
| 5/28/2021 | **David M. Scolnic** | 0.3 | $165.00 | Received and reviewed comments to Asset Purchase Agreement; draft notes to client. |
| 5/28/2021 | **David M. Scolnic** | 0.4 | $220.00 | Reviewed client's comments to Asset Purchase Agreement. |
| 5/28/2021 | **Matthew A. Hamermesh** | 0.8 | $360.00 | Telephone conversation and e-mails with W. Burnett (Bankruptcy Counsel for Midnight Madness Distilling) regarding revisions to Asset Purchase Agreement and Equipment Leases. |
| 5/29/2021 | **David M. Scolnic** | 0.7 | $385.00 | Revised Asset Purchase Agreement. |
| 5/29/2021 | **Matthew A. Hamermesh** | 0.4 | $180.00 | Review new comments on draft Asset Purchase Agreement, focusing on bankruptcy issues. |
| 5/31/2021 | **Matthew A. Hamermesh** | 1.1 | $495.00 | Continued work on revising Asset Purchase Agreement and related documents. |

| Date | Timekeeper | Hours | Amount | Description |
|---|---|---|---|---|
| 5/31/2021 | **Michele Fenkel** | 3.3 | $1,320.00 | Reviewed applicable changes to Asset Purchase Agreement; drafted and transmitted Master Subcontract Agreement to D. Scolnic; emails with D. Scolnic and M. Hamermesh re same and multiple revisions to same. |
| 6/1/2021 | **David M. Scolnic** | 0.3 | $165.00 | E-mails re: Asset Purchase Agreement revisions, Equipment List. |
| 6/1/2021 | **David M. Scolnic** | 0.3 | $165.00 | Revised Asset Purchase Agreement and sent to debtor's counsel. |
| 6/2/2021 | **David M. Scolnic** | 0.7 | $385.00 | Reviewed comments to Asset Purchase Agreement; memo to client. |
| 6/2/2021 | **David M. Scolnic** | 0.3 | $165.00 | E-mails re: Asset Purchase Agreement, Schedules, filing date. |
| 6/3/2021 | **David M. Scolnic** | 1.3 | $715.00 | Telephone call with M. Hamermesh re: contract cure payments; revised Asset Purchase Agreement; drafted certain exhibits. |
| 6/3/2021 | **David M. Scolnic** | 0.2 | $110.00 | E-mails re: Asset Purchase Agreement. |

| Date | Name | Hours | Amount | Description |
|---|---|---|---|---|
| 6/3/2021 | **David M. Scolnic** | 1.1 | $605.00 | Revised Asset Purchase Agreement and Schedules. |
| 6/3/2021 | **David M. Scolnic** | 0.2 | $110.00 | E-mails re: Asset Purchase Agreement, Master Subcontract Agreement. |
| 6/3/2021 | **David M. Scolnic** | 0.3 | $165.00 | Revised Asset Purchase Agreement and sent to debtor counsel. |
| 6/3/2021 | **Matthew A. Hamermesh** | 0.7 | $315.00 | Continued work on revising draft Motion to Approve Sale and Asset Purchase Agreement in Bankruptcy Court, and telephone conversations and e-mails with W. Burnett regarding same. |
| 6/4/2021 | **David M. Scolnic** | 1.5 | $825.00 | Revised Asset Purchase Agreement with Schedules and sent to debtor's counsel; e- |
| 6/11/2021 | **David M. Scolnic** | 0.3 | $165.00 | Revised Asset Purchase Agreement; e-mails with client. |
| 6/11/2021 | **Matthew A. Hamermesh** | 0.3 | $135.00 | E-mails and work on finalizing Asset Purchase Agreement. |
| 6/14/2021 | **David M. Scolnic** | 0.7 | $385.00 | Revised Asset Purchase Agreement. |
| 6/14/2021 | **David M. Scolnic** | 1.3 | $715.00 | Continued revision to Asset Purchase Agreement. |
| 6/15/2021 | **David M. Scolnic** | 0.6 | $330.00 | Reviewed client comments; revised Asset Purchase Agreement schedule. |
| 6/21/2021 | **David M. Scolnic** | 0.8 | $440.00 | E-mails re: Asset Purchase Agreement; revised Asset Purchase Agreement. |
| 6/21/2021 | **David M. Scolnic** | 0.8 | $440.00 | Reviewed and finalized Asset Purchase Agreement and sent to client and debtor's counsel. |
| 6/22/2021 | **David M. Scolnic** | 1.0 | $550.00 | E-mails re: Asset Purchase Agreement; revised Asset Purchase Agreement and sent to client. |
| 6/22/2021 | **David M. Scolnic** | 0.1 | $55.00 | Further e-mails re: changes to Asset Purchase Agreement. |
| 6/22/2021 | **David M. Scolnic** | 0.4 | $220.00 | E-mails re: payables; finalized Asset Purchase Agreement and sent to MMD counsel. |
| 6/29/2021 | **Matthew A. Hamermesh** | 0.1 | $45.00 | E-mails regarding updates to Asset Purchase Agreement. |
| 6/30/2021 | **David M. Scolnic** | 0.3 | $165.00 | E-mails re: Asset Purchase Agreement amendments. |
| 6/30/2021 | **Matthew A. Hamermesh** | 0.4 | $180.00 | E-mails regarding updates to Asset Purchase Agreement. |
| 6/30/2021 | **Matthew A. Hamermesh** | 0.2 | $90.00 | E-mails regarding updating Asset Purchase Agreement. |

11

116939\000001\4866-8746-9568.v1

|  | **TOTAL** |  | $21,483.00 |  |
|---|---|---|---|---|

WHEREFORE, Millstone Spirits Group, LLC, respectfully requests that this Court enter an Order:

A. Denying the Motion;

B. Disallowing the break up fee requested by ETOH;

C. Finding that Millstone has no obligation to reimburse ETOH for any fees and expenses that are not allowed by order of this Court as an administrative expense claim; and

D. Granting such other and further relief as this Court deems fair and just.

DATE: October 21, 2021                                  Respectfully submitted:

*/s/ Joel L. Perrell Jr.*
Joel L. Perrell Jr
  PA Bar No. 204803
Patricia B. Jefferson
  *Admitted Pro Hac Vice*
Miles & Stockbridge P.C.
100 Light Street, 10th Floor
Baltimore, Maryland 21202
Tel: (410) 385-3406
Fax: (410) 698-1354
Email: pjefferson@milesstockbridge.com

116939\000001\4866-8746-9568.v1

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on October 21, 2021, a true and correct copy of the foregoing Motion for 2004 Examination was served via this Court's CM ECF system upon:

- WILLIAM J. BURNETT     william.burnett@flastergreenberg.com, william.burnett@ecf.inforuptcy.com;jennifer.vagnozzi@flastergreenberg.com;jeanne.valentino@flastergreenberg.com
- KEVIN P. CALLAHAN     kevin.p.callahan@usdoj.gov
- JULIE A. CALLSEN     julie.callsen@tuckerellis.com, brittany.falkner@tuckerellis.com;thomas.fawkes@tuckerellis.com
- BONNIE B. FINKEL     finkeltrustee@comcast.net, NJ69@ecfcbis.com;Finkeltrustee@comcast.net
- HOWARD GERSHMAN     hg229ecf@gmail.com, 229ecf@glpoc.comcastbiz.net
- HARRY J. GIACOMETTI     harry.giacometti@flastergreenberg.com, harry.giacometti@ecf.inforuptcy.com;jennifer.vagnozzi@flastergreenberg.com;giacometti.flastergreenberg@gmail.com;jeanne.valentino@flastergreenberg.com
- MATTHEW A. HAMERMESH     mhamermesh@hangley.com, ecffilings@hangley.com;kem@hangley.com;mjl@hangley.com
- MEGAN N. HARPER     megan.harper@phila.gov, Edelyne.Jean-Baptiste@Phila.gov
- JEFFREY KURTZMAN     Kurtzman@kurtzmansteady.com
- JENNIFER L. MALESKI     jmaleski@dilworthlaw.com, mdolan@dilworthlaw.com;cchapman-tomlin@dilworthlaw.com
- MICHAEL G. MENKOWITZ     mmenkowitz@frof.com, brian-oneill-fox-5537@ecf.pacerpro.com;jdistanislao@foxrothschild.com
- CAROL E. MOMJIAN     cmomjian@attorneygeneral.gov
- JOEL L. PERRELL     jperrell@MilesStockbridge.com
- EVERETT K. SHEINTOCH     esheintoch@sheintochlaw.com, ssilenzi@sheintochtodd.com
- ANTHONY ST. JOSEPH     anthony.stjoseph@usdoj.gov, mardella.suarez@usdoj.gov,CaseView.ECF@usdoj.gov
- United States Trustee     USTPRegion03.PH.ECF@usdoj.gov

And via first class mail, postage prepaid, upon:

    Alcohol & Tobacco Tax & Trade Bureau
    Daniel Peralta
    Senior Counsel (Field Operations)
    1301 Clay Street, Suite 650N
    Oakland, CA 94612

    Ally Bank, c/o AIS Portfolio Services, LP
    4515 N Santa Fe Ave. Dept. APS
    Oklahoma City, OK 73118

    Commonwealth of Pennsylvania
    Department of Labor and Industry
    Collections Support Unit
    651 Boas Street, Room 925
    Harrisburg, PA 17121

116939\000001\4866-8746-9568.v1

Uline
12575 Uline Drive
Pleasant Prairie, WI 53158

Wm. F. Comly & Son, Inc.
1825 E. Boston Street
Philadelphia, PA 19125-1296

THEODORE J. ZELLER
Norris McLaughlin
515 West Hamilton Suite 502
Allentown, PA 18101

                                            */s/ Joel L. Perrell, Jr.*
                                            Joel L. Perrell, Jr.

116939\000001\4866-8746-9568.v1