**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **Midnight Madness Distilling LLC,** | **Case No. 21-11750-mdc** |
| **Debtor.** | |

**MOTION OF ETOH WORLDWIDE, LLC AND AGTECH VI, LLC,**
**FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES**
**PURSUANT TO 11 U.S.C. § 503(b)(1)(A)**

ETOH Worldwide, LLC ("ETOH") and Agtech VI, LLC ("AGVI") request that this Court enter an Order allowing their administrative expense claims, pursuant to Section 503(b)(1)(A) of the Bankruptcy Code, for unpaid amounts due under personal property leases between ETOH and AGVI, respectively, and Midnight Madness Distilling, LLC (the "Debtor"), and compelling Millstone Spirits, LLC ("Millstone") to pay these administrative expenses, and in support thereof states as follows:

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334(b).

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (O).

3. In addition, this proceeding is under the exclusive jurisdiction reserved by this Court in paragraph 34 of the Sale Order (as defined below). (ECF 178, ¶ 34.)

4. In addition, Millstone has submitted itself to the exclusive jurisdiction of this Court, as provided in Section 12.08(a) of the Millstone APA (as defined below) (Ex. C, ECF 172-1, Millstone APA § 12.08(a)).

## BACKGROUND

### ETOH's and AGVI's Leases of
### Canning Equipment to the Debtor

5. The Debtor was in the business of manufacturing and selling alcoholic beverages. The Debtor sold these beverages in various forms of packaging, including in cans.

6. In early 2021, the Debtor was facing significant financial difficulties that inhibited its ability to continue operations.

7. Among other things, the Debtor owed significant amounts to vendors who provided canning services or equipment. As a result, the Debtor needed to find a new source for canning services or equipment.

8. In February 2021, ETOH and AGVI agreed to purchase certain canning equipment that the Debtor could lease from ETOH and AGVI and use for canning its products.

9. On or about February 25, 2021, ETOH and AGVI in fact acquired the agreed canning equipment and made it available for the Debtor's use.

10. In order to lease and use the canning equipment, the Debtor agreed to pay ETOH and AGVI twelve cents per canned beverage, and accepted certain other material terms and conditions.

11. ETOH and AGVI each entered into a written lease with the Debtor for the canning equipment, incorporating the prices and terms referenced above, copies of which are attached hereto as Exhibits A and B, respectively (the "Leases").

12. The Debtor in fact began to use the equipment leased from ETOH and AGVI prior to June 21, 2021.

13. During the same time period, ETOH entered into discussions with the Debtor regarding a potential transaction to acquire the equity or assets of the Debtor as a going concern.

14. Ultimately, the Debtor and ETOH entered into an asset purchase agreement that contemplated a sale of the Debtor's assets pursuant to Section 363 of the Bankruptcy Code. (ECF 4-1; ECF 102.) In addition to a cash purchase price and other consideration, the agreement between Debtor and ETOH provided that ETOH would assume certain executory contracts to which the Debtor was a party, including the Leases.

### The Debtor's Bankruptcy Case

15. The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, on June 21, 2021 (the "Petition Date"). (ECF 1.)

16. After the Petition Date, the Debtor continued to use the canning equipment it leased from ETOH and AGVI.

17. PNC Bank, the Debtor's secured lender, objected to payment of the current rent payments due under the Leases as part of the cash collateral stipulation between PNC and the Debtor. Accordingly, since the Petition Date, the Debtor has not paid any of the accrued rent due under the Leases.

18. After the Petition Date, the Debtor held a competitive auction for the acquisition of its assets, at which Millstone was the winning bidder, over ETOH.

19. As part of its bid, Millstone agreed to pay the post-petition rent due to ETOH and AGVI as administrative expenses under the Leases.

20. Subsequently, the Debtor and Millstone entered into a new Asset Purchase Agreement. (ECF 172-1, the "Millstone APA," a copy of which is attached hereto as Exhibit C.)

21. The Millstone APA provides: "The aggregate purchase price for the Purchased Assets shall be One Million Four Hundred Thousand Dollars $1,025,0001,400,000.00), plus **the assumption of the Assumed Liabilities**, plus the Expense Reimbursement in an amount up to $100,000, as provided in the Bid Procedures Order (the "Purchase Price")." (*Id.* at § 1.05 (emphasis added).)

22. In the Millstone APA, the term "Assumed Liabilities" is defined to include the rent under the Leases to the extent the same are administrative expenses owed to ETOH and AGVI:

> Buyer shall assume and perform those monetary obligations of the Seller under the Seller's Equipment Leases with Agtech IV, LLC and ETOH Worldwide LLC (the "Rejected Leases") that arise on or after the Petition Date, to the extent that (i) such obligations are administrative claims (the "Agtech/ETOH Admin Claims") allowed pursuant to Section 503 of the Bankruptcy Code by a final, non-appealable order of the Bankruptcy Court; (ii) the Buyer shall be entitled, and have standing to object to any such Motion seeking allowance of the Agtech/ETOH Admin Claims; (iii) the Buyer shall have no obligations with respect to the Rejected Leases or the Agtech/ETOH Admin Claims other than as expressly provided herein.

(*Id.* at § 1.03(d).)

23. On September 17, 2021, this Court entered an Order granting the Sale Motion and approving the sale of the Debtor's assets to Millstone. (ECF 178, the "Sale Order.") In particular, the Sale Order provides: "The Asset Purchase Agreement, including all of its terms and conditions, and the Sale Transaction are hereby approved." (ECF 178, Sale Order ¶ 3.)

24. The sale of the Debtor's assets to Millstone closed on September 30, 2021. (ECF 186.)

25. For the use of the canning equipment under the Leases between the Petition Date and September 30, the Debtor accrued $58,364.64 in rent due to ETOH and $319,331.52 in rent due to AGVI. None of this rent has been paid. Attached hereto as Exhibits D and E are copies of invoices from ETOH and AGVI, respectively, reflecting the rent due.

## RELIEF REQUESTED

26. ETOH and AGVI respectfully request that the Court enter an order allowing them administrative expense claims in the amount of $58,364.64 and $319,331.52, respectively, and directing Millstone to pay these administrative expenses promptly.

## GROUNDS FOR REQUESTED RELIEF

27. ETOH and AGVI are entitled to allowance of the accrued post-petition amounts due as administrative expenses pursuant to Section 503(b)(1)(A) of the Bankruptcy Code.

28. Pursuant to Section 503(b)(1)(A), "After notice and a hearing, there shall be allowed administrative expenses ... including – the actual, necessary costs and expenses of preserving the estate...." 11 U.S.C. § 503(b)(1)(A).

29. "An administrative expense claim is entitled to priority under Section 503(b)(1)(A) if: (1) there was a 'post-petition transaction between the claimant and the estate,' and (2) those expenses yielded a 'benefit to the estate.'" *In re Energy Future Holdings Corp.,* 990 F.3d 728, 741 (3d Cir. 2021) (citing *In re Women First Healthcare, Inc.,* 332 B.R. 115, 121 (Bankr. D. Del. 2005)); *see also In re Goody's Family Clothing,*

*Inc.*, 610 F.3d 812, 818 (3d Cir. 2010) (citing *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir. 1976)).

30. As to the first element, it is beyond dispute that there was a post-petition transaction between ETOH and AGVI, on one hand, and the Debtor. It is well-established that, even if the debtor enters into a lease pre-petition, its continued use of the leased property after the petition date gives rise to an administrative claim. *Goody's Family Clothing,* 610 F.3d at 819; *In re Lease-A-Fleet, Inc.,* 140 B.R. 840, 845 (Bankr. E.D. Pa. 1992) ("Lauderhill's right to payment for post-petition vehicle rentals arose post-petition, even though its contract with the Debtor was entered into pre-petition. Therefore, this aspect of the requirements for an administrative claim is clearly met.").

31. Here, though ETOH and AGVI entered into leases with the Debtor prior to the Petition Date, the Debtor continued to exercise its rights under the Leases and use the canning equipment from the Petition Date until the date the sale to Millstone closed. As in *Goody's Family Clothing* and *Lease-a-Fleet*, these are post-petition transactions that satisfy the first requirement for an administrative claim.

32. As to the second element, the Leases were likewise beneficial to, and necessary for, the Debtor's estate.

33. The Debtor is in the business of manufacturing and selling, among other things, canned alcoholic beverages. It cannot do so without the ability to can the beverages. During its bankruptcy case, the only means the Debtor had for canning beverages was by utilizing the equipment it leased from ETOH and AGVI. *See Lease-a-Fleet*, 140 B.R. at 845 (finding that company that was sole lessor of vehicles to debtor whose sole business was subleasing vehicles met second element of test for administrative expense claim).

6

34. Of course, in determining whether to approve an administrative expense, "The focus is thus on the benefit to the estate, not the loss to the creditor." *In re Energy Future Holdings Corp.,* 990 F.3d 728, 742 (3d Cir. 2021) (quoting *In re Whistler Energy II, L.L.C.,* 931 F.3d 432, 441 (5th Cir. 2019)). Here, the continued leasing and use of the canning equipment benefited the Debtor's estate. The Debtor actually canned beverages and sold them, thereby realizing the benefit of the sale proceeds.

35. An administrative expense claimant is entitled to a "reasonable value" for the use of the leased property. *Goody's Family Clothing*, 610 F.3d at 819 (quoting *Zagata Fabricators v. Superior Air Prods.,* 893 F.2d 624, 627–28 (3d Cir. 1990)).

36. Under the Leases, ETOH and AGVI charged the Debtor twelve cents per can for use of the canning equipment. This price is consistent with (and actually lower than) general pricing in the market for canning equipment, and allowed the Debtor to obtain at least a reasonable return on its costs when it sold the canned beverages. Accordingly, ETOH's and AGVI's charges for use of the canning equipment are reasonable under the test courts have recognized and applied repeatedly.

37. As a result of the foregoing, ETOH's and AGVI's leases to the Debtor benefited the estate and support the allowance of an administrative expense pursuant to Section 503(b)(1)(A) in the amounts of $58,364.64 and $319,331.52, respectively. (Exs. D, E.)

38. Millstone assumed liability for these administrative expenses in the Millstone APA and should be directed to pay them promptly. *See Philadelphia Elec. Co. v. Hercules, Inc.,* 762 F.2d 303, 308–09 (3d Cir. 1985) ("[W]here (1) the purchaser of assets expressly or impliedly agrees to assume obligations of the transferor ... a successor corporation may be held responsible for the debts and liabilities of its

7

predecessor."); *Dale v. Webb Corp.,* 252 F. Supp. 2d 186, 189 (E.D. Pa. 2003) ("Generally, in Pennsylvania, when one corporation sells or transfers its assets to a second corporation, the successor does not become liable for the debts and liabilities of the predecessor [unless] the purchaser of assets expressly or impliedly agrees to assume obligations of the transferor...." (citations and quotations omitted)).

WHEREFORE, ETOH Worldwide, LLC and Agtech VI, LLC respectfully request that the Court enter an order allowing them administrative expense claims in the amount of $58,364.64 and $319,331.52, respectively, directing Millstone to pay these administrative expenses within fourteen days, and granting such other relief as the Court deems appropriate.

                                                HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

Dated: November 12, 2021         By: */s/ Matthew A. Hamermesh*
                                                Matthew A. Hamermesh
                                                One Logan Square, 27th Floor
                                                Philadelphia, PA 19103
                                                T: (215) 568-6200
                                                F: (215) 568-0300
                                                E: mhamermesh@hangley.com

                                                *Counsel for ETOH Worldwide LLC and Agtech VI LLC*