# EXHIBIT B

# EQUIPMENT LEASE AGREEMENT

**THIS EQUIPMENT LEASE AGREEMENT** (the "Lease") is dated as of June 1, 2021 and is effective as of February 25, 2021 (the "Effective Date"), by and between **AGTECH VI, LLC**, a U.S. Virgin Islands limited liability company with a principal place of business at East End Plaza, Suite 120, 6115 Estate Smith Bay, St. Thomas, VI 00802 ("Lessor"), and **MIDNIGHT MADNESS DISTILLING, LLC**, a Pennsylvania limited liability company having an office at 118 N. Main Street, P.O. Box 116, Trumbauersville, PA 18970 ("Lessee")(Lessor and Lessee are sometimes collectively referred to herein as the "Parties").

**WHEREAS**, on February 25, 2021, Lessor delivered the Equipment (as such term is defined in Section 1) to Lessee for Lessee's use in its business, and since then Lessee has used the Equipment in its business;

**WHEREAS**, the Parties acknowledge and agree that, since the Effective Date, Lessee has leased the Equipment from Lessor, and Lessor has agreed to the continued lease of the Equipment to Lessee in accordance with the terms and conditions set forth herein;

**WHEREAS**, this Lease is intended to reflect, and in fact reflects, the terms and conditions pursuant to which the Lessor has leased the Equipment to the Lessee; and

**WHEREAS**, Lessor understands that Lessee intends to file shortly a voluntary petition for bankruptcy to initiate a case (the "Bankruptcy Case") under Chapter 11 of the U.S. Bankruptcy Code (the "Bankruptcy Code") in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania.

**NOW**, **THEREFORE**, in consideration of the mutual covenants and promises hereinafter set forth, the parties hereto agree as follows:

1. <u>Lease</u>:  Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the equipment described on Schedule I attached hereto (the "Equipment").

2. <u>Term</u>:  The term shall commence on the Effective Date and shall continue for a period of two (2) years, unless earlier terminated pursuant to the terms of the Lease or extended by the mutual written agreement of the Parties.

3. <u>Rent</u>:  The monthly rent for the Equipment shall be paid in arrears within twenty (20) days of the last day of the month at the rates set forth on Schedule II attached hereto.  Lessor and Lessee acknowledge and agree that the foregoing monthly rent is an actual and necessary expense of operating the Lessee's business, and shall be entitled to administrative expense treatment under Section 503(b)(1) of the Bankruptcy Code in any Bankruptcy Case. As of the date hereof,Lessee shall pay for Lessee's use of the Equipment since the Effective Date in accordance with Schedule III attached hereto.  In addition to Lessor's other remedies, Lessor may levy a late payment charge equal to one percent (1%) per month on any overdue amount.

4.     Taxes:  Lessee shall keep the Equipment free and clear of all levies, liens and encumbrances. Lessee, or Lessor at Lessee's expense, shall report, pay and discharge when due all license and registration fees, assessments, sales, use and property taxes, gross receipts, taxes arising out of receipts from use or operation of the Equipment, and other taxes, fees and governmental charges similar or dissimilar to the foregoing, together with any penalties or interest thereon, imposed by any state, federal or local government or any agency, or department thereof, upon the Equipment or the purchase, use, operation or leasing of the Equipment or otherwise in any manner with respect thereto and whether or not the same shall be assessed against or in the name of Lessor or Lessee.  Notwithstanding the foregoing, Lessee shall not be required to pay or discharge any such tax or assessment so long as it shall, in good faith and by appropriate legal proceedings, contest the validity thereof in any reasonable manner which will not affect or endanger the title and interest of Lessor to the Equipment; provided, Lessee shall reimburse Lessor for any damages or expenses resulting from such failure to pay or discharge.

5.     Use:  Lessee will exercise due care in the installation, use, operation, and maintenance of the Equipment and will not install, use, operate, or maintain the Equipment improperly, carelessly, in violation of any applicable law, or for a purpose or in a manner contrary to that contemplated by this Lease.

6.     Permits:  Lessee shall obtain all permits and licenses necessary for the installation, operation, possession, and use of the Equipment.  Lessee shall comply with all laws, rules, regulations, and ordinances applicable to the installation, use, operation of the Equipment, and if compliance with any such law, rule, regulation, ordinance, permit, or license requires changes or additions to be made to the Equipment, such changes or additions shall be made by Lessee at its own expense.

7.     Maintenance:  Lessee shall provide for the service, repair, and maintenance of the Equipment, at its own expense, so as to keep the Equipment in as good condition, repair, appearance, and working order as when delivered to Lessee hereunder, ordinary wear and tear excepted.  Lessee shall, at its own expense, replace any and all parts and devices which may from time to time become worn out, lost, stolen, destroyed, damaged beyond repair, or rendered unfit for use for any reason whatsoever.  All such replacement parts, mechanisms, and devices shall be free and clear of liens, encumbrances, and rights of others and shall become the property of Lessor and shall be covered by this Lease to the same extent as the Equipment originally covered by this Lease.

8.     Insurance:  Lessee shall procure and continuously maintain and pay for:

a.     All risk insurance against loss of and damage to the Equipment for not less than the full replacement value of the Equipment, naming Lessor as loss payee; and

b.     Combined public liability and property damage insurance with limits as approved by Lessor, naming Lessor as additionally named insured and a loss payee.

The insurance shall be in such form and with such company or companies as shall be reasonably acceptable to Lessor, shall provide at least thirty (30) days' advance written notice to Lessor of

any cancellation, change or modification, and shall provide primary coverage for the protection of Lessee and Lessor without regard to any other coverage carried by Lessee or Lessor protecting against similar risks.  At Lessor's request, Lessee shall provide Lessor with an original policy or certificate evidencing such insurance.  Lessee hereby appoints Lessor as Lessee's attorney in fact with power and authority to do all things, including, but not limited to, making claims, receiving payments and endorsing documents, checks or drafts necessary or advisable to secure payments due under any policy of insurance required under this Agreement.

9. <u>Liens</u>:  Lessee shall not directly or indirectly create, incur, assume, or suffer to exist any mortgage, pledge, lien, charge, encumbrance, or claim on or with respect to the Equipment, or any interest therein, except the respective rights of Lessor and Lessee as herein provided.  Lessee shall promptly, at its own expense, take such action as may be necessary to duly discharge any such mortgage, pledge, lien, charge, encumbrance, or claim not excepted above if the same shall arise at any time.

10. <u>Damage to or Destruction of Equipment</u>:  Lessee shall be responsible for any loss of the Equipment from any cause at all, whether or not insured, from the Effective Date.  If the Equipment is lost, stolen, or damaged, Lessee will promptly notify Lessor of such event.  In no event shall such loss or damage relieve Lessee of its obligations under the Lease.  In the event of such loss or damage, Lessee, at Lessor's option, shall: (a) promptly repair the Equipment to return it to good condition and working order; (b) replace the Equipment with like Property of the same or later model, in good condition and working order, free and clear of all liens and encumbrances, and furnish the instruments to vest good and marketable title thereto in Lessor; or (c) if Lessor determines that the Equipment is beyond repair, pay to Lessor, within thirty (30) days of such notification, an amount equal to the depreciated value of the Equipment as of the date of loss, theft, destruction, or irreparable damage, but not less than the fair market value of the Equipment on that date.

11. <u>Indemnification; Liability</u>:

a. Lessee shall indemnify, protect, and hold harmless the Lessor, its agents, servants, successors, and assigns from and against all losses, damages, injuries, claims, demands, and expenses, including legal expenses, of whatsoever nature, arising out of the use, condition, or operation of the Equipment, regardless of where, how and by whom operated, during the term of this Lease.

b. Lessee shall promptly reimburse Lessor for any legal fees and costs Lessor, its agents, servants, successors, and assigns incur in connection with this Lease, including, without limitation, as a result of any default by Lessee or any bankruptcy proceeding involving Lessee, including, without limitation, fees and costs relating to any motion for relief from the automatic stay or any other motion, or any objection or response to any motion or other pleading, that Lessor files in any bankruptcy case.

c. Lessee shall promptly pay to Lessor the amount of all legal fees and costs Lessor, its agents, servants, successors, and assigns incur in connection with this Lease, including, without limitation, as a result of any default by Lessee or nay bankruptcy proceeding involving

3

Lessee, including, without limitation, fees and costs relating to any motion for relief from the automatic stay or any other motion, or any objection or response to any motion or other pleading, that Lessor files in any bankruptcy case.

  d. Lessee shall assume the settlement of, and the defense of, any suit or suits or other legal proceedings brought to enforce, all such losses, damages, injuries, claims, demands, and expenses, and shall pay all judgments entered in any such suit or suits or other legal proceedings.

  e. The indemnities and assumptions of liabilities and obligations herein provided for shall continue in full force and effect notwithstanding the termination of this Lease, whether by expiration of time, by operations of law or otherwise.

  f. Lessee is an independent contractor and nothing contained in this Lease shall authorize the Lessee or any other person to operate the Equipment so as to incur or impose any liability or obligation for or on behalf of the Lessor.

12. <u>Default</u>:  If Lessee fails to pay any rent or other amounts herein provided after the same is due and payable, or if Lessee fails to observe, keep or perform any other provision of this Lease required to be observed, kept or performed by Lessee, Lessor shall have the right to exercise any one or more of the following remedies:

  a. To declare any rent or other amounts due hereunder immediately due and payable without notice or demand to Lessee;

  b. To sue for and recover all rents, and other payments, then accrued or thereafter accruing;

  c. To take possession of the Equipment, without demand or notice, wherever same may be located, without any court order or other process of law, and Lessee hereby waives any and all damages occasioned by such taking of possession;

  d. To terminate this Lease;

  e. To pursue any other remedy at law or in equity.

Notwithstanding any repossession or any other action which Lessor may take, Lessee shall be and remain liable for the full performance of all obligations on the part of the Lessee to be performed under this Lease. All of Lessor's remedies are cumulative and may be exercised concurrently or separately.

13. <u>End of Lease Property Return</u>:  Upon the expiration or earlier termination of this Lease, Lessee shall return the Equipment to Lessor in good repair, condition and working order, ordinary wear and tear resulting from proper use thereof alone excepted, by delivering the Equipment at Lessee's cost and expense to such place as Lessor shall specify.  If Lessee refuses to return the Equipment in the manner designated, Lessor may repossess such Equipment and charge to Lessee the costs of such repossession or pursue any remedy to which it is entitled.

14. <u>Assignment</u>:  The Lessee may not assign this Agreement or sublet any Equipment without the written consent of the Lessor. Without waiver of the foregoing, if in any bankruptcy or similar proceeding Lessor seeks to assume and/or assign its interest in this Agreement, any such assumption and/or assignment shall be conditioned on the payment within ten days of the entry of any order approving such assumption and/or assignment all amounts required to cure any defaults under this Agreement, all other amounts otherwise due under this Agreement at that time, and any attorney's fees and costs of Lessor incurred in responding to or otherwise as a result of such assumption and/or assignment or any motion seeking the approval thereof.

15. <u>Ownership</u>:  This Agreement shall constitute a true lease under applicable Law. The Equipment is, and shall at all times be and remain, the sole and exclusive property of Lessor; and the Lessee has not acquired and shall have no right, title or interest therein or thereto.

16. <u>Single Lease</u>:  This Agreement is a single, integrated lease of all of the Equipment. Lessee shall have no right to retain some, but not all, of the Equipment without the Lessor's written consent. If the Lessee or any successor seeks to assume and/or assign this Lease in a bankruptcy or similar proceeding, the Lessor or such successor shall only assume and/or assign the entire Agreement as it applies to all of the Equipment, and may not assume and/or assign the Agreement as to some of the Equipment, but reject the Agreement as to some of the Equipment.

17. <u>Lessor's Rights to Perform for Lessee</u>:  If Lessee fails to make any payment or fails to perform or comply with any of its covenants or obligations, Lessor may at its election make such payment or perform or comply with such covenants and obligations, and the amount of such payment and the expenses incurred by Lessor in performing or complying with such covenants and obligations, as the case may be, together with interest thereon at the maximum rate permitted by law or the rate of ten percent (10%) per annum, whichever is the lesser, shall be deemed additional rent payable by Lessee upon demand.  No election to perform or pay by Lessor shall constitute waiver of any covenant or obligation of Lessee or of any future default.

18. <u>Notices</u>:  All notices, requests, demands, claims, and other communications hereunder will be in writing, and will be sent to the address set forth for the party to whom the notice is addressed in the preamble to this Lease.  Any notice will be deemed duly given two business days after it is sent by registered or certified mail, return receipt requested, postage prepaid, and addressed to the intended recipient, or one business day after it is sent by nationally recognized overnight courier, addressed to the intended recipient.  Any party may send any notice, request, demand, claim, or other communication hereunder to the intended recipient at the address set forth above using any other means (including personal delivery, expedited courier, messenger service, telecopy, telex, ordinary mail, or electronic mail), but no such notice, request, demand, claim, or other communication will be deemed to have been duly given unless and until it is actually received by the intended recipient.  Any party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other party notice in the manner herein set forth.

19.     Entire Agreement:  This Lease constitutes the entire agreement between the parties and supersedes any prior understandings, agreements, or representations by or between the parties, written or oral, to the extent they related in any way to the subject matter hereof.

20.     Counterparts:  This Lease may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.

21.     Headings:  The section headings contained in this Lease are inserted for convenience only and will not affect in any way the meaning or interpretation of this Lease.

22.     Governing Law:  This Lease will be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania without giving effect to any choice or conflict of law provision or rule.

23.     Amendments:  No amendment of any provision of this Leases will be valid unless the same is in writing and signed by both of the parties hereto.

24.     Severability:  Any term or provision of this Lease that is invalid or unenforceable in any situation in any jurisdiction will not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

[Signature page follows]

IN WITNESS WHEREOF, the parties have executed this Lease on the date set forth above.

    AGTECH VI, LLC,
    a U.S. Virgin Islands limited liability company

        By: XO ENERGY WORLDWIDE, LLLP,
        a U.S. Virgin Islands limited liability limited partnership,
        its Sole Member

            By: XO EW, LLC,
            a U.S. Virgin Islands limited liability company,
            its General Partner

            By: _____
            Name: Shawn Sheehan
            Title: Chief Executive Officer

    MIDNIGHT MADNESS DISTILLING, LLC,
    a Pennsylvania limited liability company

    By: _____
    Name: Casey Parzych
    Title: President

# SCHEDULE I

# EQUIPMENT

Manufacturer:  CODI Manufacturing
Description:  CCL-45 Craft Counterpressure Canning Line
Serial no.: E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

Manufacturer:  CODI Manufacturing
Description:  CCL-45 Craft Counterpressure Canning Line
Serial no.: E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

Manufacturer:  CODI Manufacturing
Description:  CCL-45 Craft Counterpressure Canning Line
Serial no.: E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

Manufacturer: PACMAC, Inc.
Description:  In-Line Labeler
Serial no.: JM-200-1

Manufacturer: PACMAC, Inc.
Description:  In-Line Labeler
Serial no.: JM-200-2

Manufacturer:  LANXESS Corporation
Description:  DT-6 Touch Velcorin System
Serial no.: 90683520

Custom fabricated beverage processing system on a 53' trailer with 3,500 gallon batch tanks, internal mixers, carbonation system, and velcorin machine.

## SCHEDULE II

## CANNING RATES

| CAN TYPE | RATE |
|---|---|
| 12 oz. aluminum | $0.1200/can |

## SCHEDULE III

## ADDITIONAL PAYMENT SCHEDULE

For the period commencing on February 25, 2021 through June 1, 2021, Lessee leased Lessor's Equipment to produce a total of 891,016 aluminum cans (12 oz.) at the rate of $0.12 per can for a total Rent due of $106,921.92. Thus, Lessee shall pay Lessor $106,921.92, plus a late payment charge of one percent (1%) per month, until this amount is paid. Lessee shall pay this amount no later than the date on which this Lease is assumed in a Bankruptcy Case, or, if Lessee does not file a Bankruptcy Case, according to the following payment schedule:

| DATE | PAYMENT AMOUNT |
|---|---|
| June 1, 2021 | $18,178.51 |
| July 1, 2021 | $18,178.51 |
| August 1, 2021 | $18,178.51 |
| September 1, 2021 | $18,178.51 |
| October 1, 2021 | $18,178.51 |
| November 1, 2021 | $18,178.51 |

10