**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| Midnight Madness Distilling LLC, | : | |
| Debtor. | : | Bankruptcy No. 21-11750-MDC |

# O R D E R

**AND NOW**, on June 21, 2021, Midnight Madness Distilling LLC (the "Debtor") filed a voluntary chapter 11 petition (the "Petition") under the United States Bankruptcy Code, 11 U.S.C. §§101, *et seq.* (the "Bankruptcy Code").[1]

**AND**, contemporaneous with the Petition, the Debtor filed a motion for approval of procedures for the sale of substantially all of its assets pursuant to §363 of the Bankruptcy Code, and the assumption and assignment of certain executory contracts and unexpired leases pursuant to §365 of the Bankruptcy Code (the "Sale Procedures Motion").[2]

**AND**, on July 30, 2021, Casey Parzych ("Mr. Parzych"), a member of the Debtor, filed a declaration in support of the Sale Procedures Motion (the "Parzych Declaration").[3]

**AND**, on August 12, 2021, the Court entered an order granting the Sale Procedures Motion (the "Sale Procedures Order").[4]

**AND**, also on August 12, 2021, the Debtor filed a notice of executory contracts and unexpired leases proposed to be assumed and assigned to the purchaser of the Debtor's assets

---

[1] Bankr. Docket No. 1.

[2] Bankr. Docket No. 4.

[3] Bankr. Docket No. 98.

(the "Cure Notice"),[5] which included a Warehouse Lease with Finland Leasing ("Finland") for property located at 2300 Trumbauersville Road, Quakertown, Pennsylvania (the "Warehouse"), and represented that the amount required to cure any outstanding balance under the Warehouse Lease prior to assumption and assignment was $0.[6]

**AND**, on September 17, 2021, the Court entered an order (the "Sale Order")[7] approving the sale of substantially all of the Debtor's assets to Millstone Spirits Group, LLC ("Millstone"), pursuant to an Asset Purchase Agreement attached as Exhibit A to the Sale Order (the "APA").

**AND**, attached to the APA at Schedule 1.01 was a list of executory contracts and unexpired leases (the "Assigned Contracts") to be assumed and assigned to Millstone, including the Warehouse Lease.

**AND**, the Sale Order approved the assumption and assignment of the Assigned Contracts to Millstone.

**AND**, on October 13, 2021, the Court entered an order converting the Debtor's chapter 11 bankruptcy case to chapter 7 of the Bankruptcy Code.[8]

**AND**, on October 14, 2021, Bonnie B. Finkel was appointed chapter 7 trustee of the Debtor's bankruptcy case (the "Chapter 7 Trustee").[9]

**AND**, on December 23, 2021, Millstone filed a motion to enforce the Sale Order (the

---

[4] Bankr. Docket No. 110.

[5] Bankr. Docket No. 114.

[6] Mr. Parzych's father, Gary Parzych, is the owner of Finland. *See* Parzych Declaration, at ¶18.

[7] Bankr. Docket No. 178.

[8] Bankr. Docket No. 191.

[9] Bankr. Docket No. 192.

"Motion to Enforce"),[10] whereby it asserts that Finland sought from Millstone a monthly Warehouse rental amount in excess of the $2,050.00 per month set forth in the Warehouse Lease.[11]

AND, on January 18, 2022, Finland filed an objection to the Motion to Enforce (the "Objection"),[12] asserting that the Court does not have jurisdiction to resolve the dispute between Millstone and Finland because (1) it involves two non-debtor parties, (2) disputing over events that occurred after consummation of the sale of the Debtor's assets to Millstone, and (3) the outcome of the dispute has no asserted benefit to, or impact upon, the bankruptcy estate.

AND, on January 26, 2023, the Court held a hearing (the "January Hearing") on the Motion to Enforce and the Objection.

AND, at the conclusion of the January Hearing, the Court determined that (a) it would defer, pending a continued hearing, ruling on the Court's jurisdiction over the dispute between Millstone and Finland involving (i) the period prior to assignment of the Warehouse Lease to Millstone (the "Pre-Assignment Claims"), and (ii) the amount of rent Millstone was obligated to pay for the Warehouse following assignment of the Warehouse Lease (the "Post-Assignment Rent Dispute"), and (b) other than the Post-Assignment Rent Dispute, the Court does not have jurisdiction over any dispute between Millstone and Finland regarding alleged events, claims, or damages that occurred or arose after assignment of the Warehouse Lease to Millstone (the "Partial Jurisdictional Ruling").

---

[10] Bankr. Docket No. 248.

[11] Millstone vacated the Warehouse on or about December 31, 2021, and therefore the monthly rent in dispute covers the post-assignment months of October, November, and December 2021.

[12] Bankr. Docket No. 258.

**AND**, on March 15, 2022, as directed by the Court at the January Hearing, Millstone submitted a proposed order reflecting the Partial Jurisdictional Ruling.[13]

**AND**, on April 20, 2022, the Court held a continued hearing on the Motion to Enforce and Objection (the "Continued Hearing," and together with the January Hearing, the "Hearing"), at which time counsel for the Chapter 7 Trustee advised that the Chapter 7 Trustee was in the process of investigating the Debtor's pre-petition payments to Finland, but believed there may be, *inter alia*, fraudulent conveyance claims brought against Finland related to the payment of rent for the Warehouse in excess of the $2,050.00 provided by the Warehouse Lease.

**AND**, at the conclusion of the Continued Hearing, the Court took under advisement the issue of whether it has jurisdiction over any Pre-Assignment Claims and the Post-Assignment Rent Dispute.

It is **HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1. As the Court determined by its Partial Jurisdictional Ruling at the January Hearing, other than the Post-Assignment Rent Dispute, the Court does not have jurisdiction over any dispute between Millstone and Finland regarding alleged events, claims, or damages that occurred or arose after assignment to Millstone of the Warehouse Lease.

2. The Court has jurisdiction over the dispute between Millstone and Finland related to any Pre-Assignment Claims[14] and the Post-Assignment Rent Dispute.

3. Resolution of the Post-Assignment Rent Dispute requires a determination of what

---

[13] Bankr. Docket No. 269. For reasons unclear to the Court, the docket reflects that the proposed order was not subsequently entered.

[14] The Court notes, however, that at the January Hearing, Finland conceded that the cure amount for the Warehouse Lease upon assumption by the Debtor and assignment to Millstone was $0.

the Debtor's rights and obligations were with respect to the Warehouse Lease when it was assumed, and therefore what was assigned to Millstone.[15] Millstone asserts that it was assigned the rights and obligations existing under the written Warehouse Lease that was included in the data room made available to potential purchasers pursuant to the Sale Procedures Order. Millstone argues that this is supported by the Parzych Declaration in support of the Sale Procedures Motion, whereby Mr. Parzych swore under penalty of perjury that "neither Finland nor my father have any formal or informal agreement or arrangement regarding the [Warehouse Lease or the Warehouse] with me, the Debtor, the Debtor's affiliates or the Buyer or any of its affiliates or its agents." Parzych Declaration, at ¶22.[16] Although the Court did not have the benefit of evidence at the Hearing, it understands Finland's position to be that there was an oral modification between it and the Debtor to the terms of the written Warehouse Lease, pursuant to which the stated $2,050.00 monthly rent was increased.

4. Likewise, any asserted Pre-Assignment Claims by Finland implicate the Sale Order's bar on claims, with certain exceptions, against Millstone related to the purchased assets as well as its prohibition on non-debtor parties to the Assigned Contracts asserting any default, unpaid obligation, pecuniary loss, or other obligation arising or accruing prior to closing on the sale to the Millstone. *See* Sale Order, at ¶¶7, 8. Furthermore, the Sale Order approved the assumption and assignment of the Assigned Contracts, including the Warehouse Lease, to Millstone, and barred the assertion of claims against Millstone for pre-assignment defaults. *Id.,*

---

[15] Based on the representations of counsel at the Hearing, it appears that neither party disputes that the Warehouse Lease's term ended on December 31, 2017, at which point the Debtor's tenancy became month-to-month.

[16] Reference to the "Buyer" in the Parzych Declaration refers to ETOH Worldwide, LLC, which was the proposed purchaser at the time the Sale Procedures Motion was filed.

at ¶¶12, 14.

5. Determination of the Debtor's rights and obligations under the Warehouse Lease upon its assumption and assignment to Millstone, and whether the assertion of any pre-assignment claims against Millstone violate the claims bars in the Sale Order, directly implicate this Court's approval of the assignment of the Warehouse Lease to Millstone by the Sale Order. Among the enumerated core proceedings arising under title 11 over which bankruptcy courts may hear and determine are "orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate." 28 U.S.C. §157(N). Although the Warehouse Lease existed prior to and independent of the Debtor's bankruptcy case, Millstone's rights and obligations under the agreement "were established as part of the core bankruptcy court function of approving the sale of [the Debtor's] property." *In re Petrie Retail, Inc.*, 304 F.3d 223, 229 (2nd Cir. 2002). It is therefore within this Court's core jurisdiction to determine what those rights and obligations consisted of, including whether Millstone is responsible for any Pre-Assignment Claims notwithstanding the Sale Order's claim bar provisions, and whether the amount of rent for which Millstone was responsible prior to vacating the Warehouse exceeded the stated amount in the Warehouse Lease. *See Id.* (finding that motion by purchaser of chapter 11 debtor's assets, including commercial lease, to enforce provisions of sale and plan confirmation orders was a core proceeding because it was based on rights established in the sale order and sought enforcement of an injunction in the sale order and therefore "uniquely affected and was affected by core bankruptcy functions" because).

6. The Court rejects Finland's argument that Millstone can raise as defenses, in any

potential non-bankruptcy court action, that the Debtor misrepresented the Warehouse Lease being assigned and/or that the Debtor or its bankruptcy estate, not Millstone, is responsible for any claims by Finland. Where the dispute implicates the Court's core bankruptcy jurisdiction related to its Sale Order, Millstone is not relegated to raising the issues central to the Motion to Enforce as a defense in a non-bankruptcy action. *See In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1063-64 (5th Cir. 1997) (affirming the district court's rejection of argument that a motion to enforce the discharge injunction, a core proceeding calling on the bankruptcy court to construe and enforce its own orders, was a federal defense to a state law contract claim rather than a core proceeding under 28 U.S.C. §157(b)(2)(B), (C), and (O)).

7. The Court therefore finds that it has jurisdiction pursuant to 28 U.S.C. §157(b) to hear and determine Pre-Assignment Claims that Finland asserts, if any, and the Post-Assignment Rent Dispute, as both are core matters requiring the interpretation and enforcement of the Sale Order.[17]

8. The Court shall hold a status conference with counsel for Millstone, Finland, and

---

[17] Even if the Court were to determine that resolution of the Post-Assignment Rent Dispute was not a core proceeding, it would find, as advanced by Millstone, that it falls under "related to" jurisdiction that would permit the Court to issue a report and recommendation to the District Court pursuant to 28 U.S.C. §157(c). The Chapter 7 Trustee advised at the Continued Hearing that she is likely to pursue claims against Finland based on pre-petition rent payments the Debtor made with respect to the Warehouse, including potential fraudulent conveyance claims. Such an action, which is an enumerated core proceeding under 28 U.S.C. §157(b)(2)(H), would necessarily require the Court to determine what the Debtor's rent obligation was under the Warehouse Lease and whether the Debtor made payments to Finland in excess of the required amount. That determination is at the heart of the Post-Assignment Rent Dispute, and therefore even if the dispute is non-core, it is "related to" the Debtor's bankruptcy case, as it will have a conceivable effect on the administration of the bankruptcy estate because it will involve the same issue as the core fraudulent conveyance action. *See Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984) ("related to" jurisdiction under 28 U.S.C. §157 exists if the result of the action could conceivably affect the administration of the bankruptcy estate). Such jurisdiction is limited to the issuance of proposed findings of fact and conclusions of law to the District Court, *see* 28 U.S.C. §157(b)(5), but because the Court finds that the Post-Assignment Rent Dispute is a core matter, that subsection is not implicated.

the Chapter 7 Trustee on **May 30, 2023, at 11:30 a.m.**, in Bankruptcy Courtroom No. 2, Robert N.C. Nix Federal Building & Courthouse, 900 Market Street, 2nd Floor, Philadelphia, Pennsylvania to confer regarding a schedule for the Motion to Enforce.

Dated: April 30, 2023

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Harry J. Giacometti, Esquire
William J. Burnett, Esquire
Flaster/Greenberg, PC
1717 Arch Street, Suite 3300
Philadelphia, PA 19103

Matthew A. Hamermesh, Esquire
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933

Rebecca A. Leaf, Esquire
Patricia B. Jefferson, Esquire
Miles & Stockbridge P.C.
100 Light Street, 10th Floor
Baltimore, MD 21202

Marla S. Benedek, Esquire
John T. Carroll, III, Esquire
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103

Steven M. Coren, Esquire
Coren & Ress, P.C.
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103-2713

Bonnie B. Finkel, Esquire
P.O. Box 1710
Cherry Hill, NJ 08034

Kevin P. Callahan, Esquire
United States Trustee
Robert N.C. Nix Federal Building
900 Market Street, Suite 320
Philadelphia, PA 19107